SMYTH & al. AGENTS OF THE VILLAGE SCHOOL DISTRICT IN BRUNSWICK, *petitioners for mandamus*,

*versus*

JOHN F. TITCOMB, TREASURER OF THE TOWN.

The court is authorized, both by the common law and by statute, to issue writs of *mandamus* to courts of inferior jurisdiction, to corporations and individuals, when necessary for the furtherance of justice and the due execution of the laws.

The process of *mandamus* cannot be used for the review or correction of judicial errors.

The collector of taxes of a town has the same powers, and is under the same obligations, to collect school district taxes, as in cases of town taxes.

The treasurer of a town has the same authority, and is under the same obligations, to enforce the collection and payment of school district taxes, as in cases of town taxes.

In discontinuing or reconstructing its school districts, a town may make its action to be conditional, dependent upon the consent of the districts to be affected. Such conditional action is not a delegation of its authority.

By the special statute of 1848, ch. 140, the doings of the town of Brunswick, for the formation of its village school district, were confirmed, and the district is held to be legally established.

If a school district have legally voted to raise a sum of money, for purposes within their authority, and the assessors of the town ascertain the fact and assess the same, such assessment is not rendered inoperative by the omission of the district clerk to certify to the assessors the vote of the district.

On a summary hearing, upon a petition for a *mandamus,* the court will not determine the constitutionality of a law, involving merely the rights of third persons.

A ministerial officer, entrusted with the collection and disbursement of revenue, in any of the departments of the government, has no right to withhold a performance of his ministerial duties, prescribed by law, merely because he apprehends that others may be injuriously affected thereby, or that possibly the law may be unconstitutional.

Petition for *mandamus.* The respondent was treasurer of the town of Brunswick.

Some proceedings were had by the inhabitants of that town, in April, 1848, with a view to the consolidation of three of its school districts into one, to be called the village district. These proceedings are sufficiently stated in the decision of the case by the court. In August, 1848, an Act of the Legislature authorized the inhabitants of the village district to raise, for the support of schools, a sum not exceeding, in any one year, three-fifths of the amount, apportioned to said district from the school money raised by the town for the same year, to be assessed and collected in the manner provided for the assessment and collection of school district taxes.

The petitioners allege *that,* at a legal meeting in April, 1849, the district voted to raise, by a tax, $702,56, being three-fifths of the amount apportioned to the district, out of the money raised that year by the town, for supporting schools ; *that,* pursuant to the public Act of August 6, 1846, the district had borrowed $325, for repairing the school houses belonging to said district, which last mentioned sum, the respondent, as treasurer of the town, had received and duly paid out for said repairs ; *that* the assessors of the town duly assessed said sums, (amounting with the interest on said loan, and with the authorized overlayings, to $1093,48,) upon the polls and es-

tates within said district, according to law ; and committed to Stephen Snow, the collector of taxes of said town, lists of said assessment, with warrant to levy and collect the same, and pay the amount thereof to said Titcomb, on or before the first day of December, 1849 ; and also certified to said Titcomb, the assessment and commitment aforesaid ; *that* said Snow, after collecting a part of the sums so committed to him, (out of which the money borrowed as aforesaid, has been fully paid,) has neglected to complete the collection, leaving not less than $600, yet uncollected ; *that*, in execution of the contracts entered into by the district, for the support of schools, the officers of the district have drawn their order upon the selectmen of the town, in favor of a person having a just claim against the district, which order the selectmen have declined to pay or accept, for the reason, alleged by them, that the district has already received its full proportion of the school money, *raised by the town*, and that the amount raised by the extra taxation in the district, has not been collected, and, therefore, is not subject to the order of said district ; *that* an order of the like tenor, and for the same purpose, has been drawn upon the said Titcomb, treasurer, which he has declined to pay, for the reason, alleged by him, that there are no funds in his hands, subject to such order ; *that* said petitioners have frequently requested said Titcomb to issue his warrant of distress against the said Snow, collector as aforesaid ; which he has wholly refused to do ; *that*, by means of said refusals, the inhabitants of said district are aggrieved and deprived of their just rights : —

Wherefore, they pray that a Rule be issued to said Titcomb, to appear at, &c., to show cause, if any he have, why a writ of *mandamus* should not be issued by this court, commanding him to issue such warrant of distress.

This petition was entered at the term of the court held for the county of Oxford, where it was *ordered*, that a rule be issued to said Titcomb, to show cause, &c. at the term of the court then next to be held for the county of Somerset, when and where it was agreed, that the cause should be postponed

and stand for argument at the term of the court, then next to be held for the county of Waldo, and that the respondent shall then and there make such a written return in answer to this petition, as he would by law be required to make to an alternative writ of *mandamus*, and that, upon such return, or upon the default of the respondent to make such return, and upon the proofs adduced by the parties, if the opinion of the court shall be in favor of granting the prayer of the petition, a peremptory writ of *mandamus* shall then issue.

And at said term for the county of Waldo, the said Titcomb filed his answer.

That answer contained an extended and well drawn argument upon the law, applicable to the facts which it alleged. The facts will sufficiently appear in the opinion given by the court.

The grounds assumed by the respondent were, in substance :

I. The so called village school district never had a legal existence.

1. It was not created according to the constitution or the laws of the State. By article 8, of the constitution, the mode in which the Legislature may proceed to enforce the maintenance of public schools is exactly prescribed. It is only by acting through the towns. The Legislature has no authority to create, *directly*, a school district, with power to raise money.

2. The vote of the town to consolidate the three districts into one, " *if such should be their wish*," was a delegation of authority, such as it was not lawful for the town to make.

3. But if lawful, the districts never complied with the condition. They never expressed such a wish. The utmost that can be claimed from their respective votes, is that they concurred in a measure for uniting the more advanced scholars of each district into one school, under the statute of 1847, c. 25.

4. If the town had intended to merge the three districts into one, the law authorized it to be done only at some annual meeting in March or April.

5. The Act of the Legislature of August 3, 1848, did not

pretend to form a new district, but was merely confirmatory of the votes passed by the districts. It was therefore inoperative, inasmuch as the districts had not all voted for the formation of the new district.

6. It cannot have been the intention of the Legislature, by that act alone, to establish the Union district; for, if so, the town could have no authority to change its limits; a right which the law expressly gives to towns over their districts.

II. But, if the village school district had a legal existence, the tax was not legally assessed.

1. The Legislature had no authority, under the constitution, to *compel* individuals to become subject to taxation under any vote of *such* a corporation.

2. The assessors of the town had no official notice, from the districts, of their having complied with the condition of the town vote, whereby their consolidation was effected. In fact such compliance was never had.

3. The money assessed, was never raised by a legal vote of the district. For, beyond the amount voted, the assessors included $325, to repay money which the district had borrowed; and that money was borrowed for purposes not authorized by the statute of August 8, 1846, under which it purported to have been obtained, and upon different times of pay-day from those prescribed by that statute.

4. No certificate of the district vote, authorizing the borrowing of money, was ever furnished by the district clerk to the assessors or treasurer of the town; nor had any certificate been furnished them by the district agents, that money had been rightfully borrowed.

III. If it be constitutional for the Legislature to authorize school districts to raise money, the power cannot be given to a single district, by special legislation. It can be done only by a general law operating upon all the school districts in the State.

IV. In a state of facts, like those presented in this case, it is *not* the *school district*, even though legally constituted, but it is the *town*, which has authority to apply for a writ of *man-*

*damus*, to act, not upon any officers of the *district*, but upon those of the *town*.

The facts, disconnected with the arguments, presented in the respondent's answer, are admitted to contain the truth of the case.

*Barnes*, for the petitioners.

*S. Fessenden*, for the respondent.

The constitution of this State, article eight, recognizes that a general diffusion of the advantages of education is essential to the preservation of the rights and liberties of the people. To promote this important object, "the Legislature are authorized, and it shall be their duty to require the several towns' to make suitable provision, at their own expense, for the support and maintenance of public schools."

This is the whole extent of the power of the Legislature, in regard to the establishment, support and maintenance of public schools.

It is therefore very clear that these public schools must be provided for, and maintained by the several *towns*, and at their expense.

It is in their corporate capacity only, that they can be compelled to perform this duty. And this duty can only be enforced by laws, acting under the sanction of penalties, and equally applicable to all the towns in the State ; and on the towns only.

A law, to be constitutional, operating on a town, must operate on the *whole* town, and in its corporate capacity. The inhabitants of any territory in the State are not a town, unless incorporated as such. It is essential to a town, that the inhabitants be incorporated as such.

The Legislature has no power to compel any particular portion of the inhabitants of a town, either by name, by number, by geographical, or local position, or by pecuniary ability, to support and maintain public schools.

They cannot legislate to compel school districts, as such, to support and maintain public schools. What are school districts but geographical portions of the several towns, with the

inhabitants residing thereon? Definite portions of towns; not towns. They may be corporations; but they are *not towns*. And it is towns, and towns only, who may be made to feel that stringent legislation, which would coerce them to support and maintain public schools. *School District No.* 3, *Sanford* v. *Brooks*, 23 Maine, 545; Revised Statutes, chap. 17, sect. 2.

This village district, if it have a corporate existence, is a private corporation. A corporation created exclusively for the benefit of those inhabiting a small portion of the territory of Brunswick. It has none of the characteristics of a public corporation, established to promote literature. It is not an academy or college, to which all the citizens have a right of access. It is not an institution open to all the inhabitants of Brunswick even. One residing out of the limits of the village district, could have no access to the benefits of the school, should he hire his board in the district. It is a private school, existing by act of the Legislature only, if at all.

The Legislature cannot compel a man to become a member of such a corporation, against his will. 4 Wheaton, 518, *Dartmouth College* v. *Woodward*, see pages 707 and 708.

There are, by the constitution, but two modes by which the Legislature is authorized to make provision for the diffusion of the advantages of education, *without the consent, or direct assent of the citizens of the State*. One of the modes is by endowing colleges, &c.; the other is by compelling towns to make provision.

It is then in the power of the Legislature to make suitable provision for the support and maintenance of *public schools*, only through the action of the several towns. Not by laying a tax *directly* on the towns, or portions of the inhabitants of towns, but by *law* applicable to all towns, compelling the towns to make suitable provision, at their own expense, for the support and maintenance of public schools.

The power granted to towns to determine the number and limits of the school districts within them, and the duty required of them so to do, is a power and a duty *which* cannot

be delegated or exercised upon any conditions ; 12 Mass. 206, 214. The vote of the town of Brunswick, which consolidated the three districts conditionally, was therefore void. 3 N. H. 168 ; 3 Story, 411. Even if such a conditional vote could be valid, the condition has never been performed, for the districts have never given their consent in any legal form.

The inhabitants of the several towns, cannot assign the power which is vested in the whole town, that of raising and expending money for the support of schools therein, to the inhabitants of the various school districts. The evils of such a system would be too glaring, and the absurdity too manifest. It would destroy at once that equalizing of *taxation* upon the people, and that equality of *burdens*, as well as privileges, which is a primary object of the constitution. It is partial legislation. And no good reason can be assigned, why the power might not be given to any small portion of the inhabitants to tax the residue, as to give to the inhabitants of a majority of a fraction power to tax the rest of the people.

But the great objection is, that it makes school districts entirely independent of towns, overlooking the eighth article of the constitution. If the Legislature could, *without the intervention of towns*, authorize one school district to raise any sum of money for the support and maintenance of schools, and impose the duty so to do, the Legislature might give the same powers to, and require the same duties of, all the school districts ; and the action of the several towns be superseded.

The Legislature, then, not having the power to authorize the district to raise money for the support of a public school, the act of the school district in voting the money for such object was merely void, the assessment was also void. He who should enforce the collection of it would be a trespasser.

Such a tax no collector can be bound to collect. And above all, the court, in its wide discretion, would never coerce a treasurer to enforce the collection of a tax, thus unconstitutionally raised and unconstitutionally assessed. Can such an officer rightfully be compelled, *without indemnity*, to

expose himself to trespass suits by every person who should, by the *mandamus* asked for, be made to pay an illegal tax? We believe not.

Howard, J. — This court has power to issue writs of *mandamus* to courts of inferior jurisdiction, to corporations and individuals, when it "may be necessary for the furtherance of justice, and the due execution of the laws." Rev. Stat. c. 96, § 5. As a court of the highest common law jurisdiction, it would have this judicial sovereignty and general superintendence throughout the State, upon the principles of the common law, if there were no statute upon the subject. It is the only power through which magistrates of inferior jurisdiction, and officers of the law, can be compelled to perform their official duties. The writ is to issue "in all cases where the party hath a right to have any thing done, and hath no other specific means of compelling its performance." 3 Black. Com. 110. But this process cannot be used to review or correct judicial errors. *Kendall* v. *The United States,* 12 Peters, 524; *Ex parte Hoyt,* 13 Peters, 279; *Ex parte Whitney,* 13 Peters, 404; *The People* v. *The Judges of Dutchess C. P.* 20 Wend. 658; *Kennebunk Toll Bridge, pet'rs,* 11 Maine, 263.

Upon the present application for a *mandamus,* notice has been ordered, and the respondent has appeared, and answered; by agreement, as upon the return of an alternative writ. He substantially admits the facts alleged and proved by the petitioners, [certain errors in the statement being shown and corrected by the proofs offered,] but alleges other facts and conclusions in avoidance, and as reasons why the writ should not issue. The answer is unnecessarily, if not improperly argumentative, but the facts, on which the respondent relies, and from which he draws his conclusions, are stated in conformity with the truth of the case, and in a manner to be readily apprehended.

The duties of the respondent, as treasurer of the town, in reference to school districts, are prescribed and imposed by statute. Upon receiving from the assessors of the town a cer-

tificate of the assessment of a school district tax, he had the same authority to enforce the collection and payment, as in case of town taxes. R. S. c. 17, § 33. And the collector, upon receiving the commitment and warrant for collection from the assessors, had the same powers, and was held to proceed in the same manner, as in the collection of town taxes. R. S. chap. 17, sect. 32. The assessors, collector, and treasurer are to be allowed by the school district, for assessing, collecting, and paying any district tax, a compensation proportionate to what they receive for similar services respecting town taxes. R. S. chap. 17, sect. 36. On the neglect of the collector to complete the collection and payment of the tax in question, by the time named in his warrant from the assessors, it became the duty of the treasurer to issue a warrant of distress to the delinquent, in the form prescribed by law, to compel the collection; (R. S. chap. 14, sect. 111,) unless he has shown that sufficient cause existed for omitting to conform to the provisions of the statute, in this particular, in this case.

The reasons set forth by the respondent, in his answer, for declining to issue a warrant of distress, assume substantially the form of objections. Waiving, for the present, the question of his right to make these objections, while occupying the position of a ministerial officer, charged with duties, upon the due performance of which, important rights and privileges, of large portions of the community, mainly depend, we will consider the objections as they are presented. For, if it is manifest from an inspection of the proceedings, that the collector has no authority to collect the tax, by reason of its illegality; or, that the persons assessed, on being compelled to pay it, would have a remedy back for restitution, the court will not grant a process, to enforce a collection that would be fruitless and oppressive.

The first objection is, that the village district, in which the petitioners allege that the tax in question was raised and assessed, was not legally created and established. Every town in this State is authorized and empowered, at the annual meet-

ing, to determine the number and extent of the school districts within its limits; " and, if necessary, may divide or discontinue any such district ; or annex it to any other district in such town, with such reservations and conditions, as may be proper to preserve the individual rights and obligations of the inhabitants thereof." R. S. chap. 17, sect. 1, 2. Every school district, thus established, " shall be a body corporate ; with power to sue and be sued, and to hold any estate, real or personal, for the purpose of supporting a school or schools therein ; and apply the same to such object agreeably to the provisions, of this chapter, independently of the money raised by the town for that purpose." R. S. chap. 17, sect. 20 ; Statutes of 1821, chap. 17, sect. 7.

The town of Brunswick voted, at their annual meeting, April 3, 1848, " that school districts Nos. 1, 2 and 20, be discontinued and to be constituted one district, to be called the village district, provided such shall be the wish of the several districts respectively." It will not be doubted that the town had authority, under the statute cited, (chap. 17, sect. 1, 2,) to discontinue and re-construct the school districts, within its limits, with such reservations and conditions as are therein mentioned. But it could not delegate its power, in this respect, derived wholly from the statute, to other corporations. The argument of the respondent's counsel is conclusive on this point. But while it was competent for the town to disregard the wishes of the districts, in such proceedings, it was equally competent to consult them. Making the wishes or consent of the districts a condition upon which its vote was to become absolute, did not transfer or delegate its authority to them. It would be no less the act of the town, when the vote took effect, because it might have been approved by the districts. The condition was prescribed for its own action, in a matter within its jurisdiction, and was not, in our opinion, designed to surrender its authority to the districts. ·

How the wishes of the districts were to be manifested, in order that the vote of the town might take effect, does not appear. Were they to be by votes or by silent acquiescence ?

And if by votes, or resolves, in what manner, and to whom to be communicated? Each district acted to a certain extent, on the subject of the union of the several districts, and though, perhaps, it might reasonably be inferred that they thereby respectively manifested their willingness, and substantially their wish, to form the united district in pursuance of the vote of the town, yet such is not the express language of their votes. Whether, then, the vote of the town became effective to establish the village district, might, upon a strict construction, admit of some question, if the subject rested there. But, as if to place the matter beyond a doubt, the Act of August 3, 1848, c. 140, provided:—" Sect. 1. The vote of the inhabitants of the town of Brunswick, passed at their annual meeting, on the third day of April, one thousand eight hundred and forty-eight, establishing a school district in said town, to be known as the village district, is hereby confirmed, and the said village district shall have and enjoy all the powers and privileges, and be subject to all the duties belonging to school districts, under the laws of this State.

" Sect. 2. The inhabitants of said village district, are hereby authorized, at their district meeting, to raise such sum of money in addition to their proportion of the school money raised by the town, as may be deemed necessary for the support of the public schools, within said district ; but the amount so raised by the district in any year, shall not exceed three-fifths of the amount apportioned to said district, from the school money, raised by the town for the same year.

" Sect. 3. The money so raised by the inhabitants of said district, shall be assessed and collected in the same manner as is now provided for the assessment and collection of school district taxes."

Section 4 authorizes the inhabitants of the district to choose their own agent, and to adopt any suitable by-laws, not repugnant to the constitution and laws, for the regulation of the schools in the district. This Act was designed to confirm the vote of the town, and to *establish* the village district, with enlarged powers and duties, and if constitutional and

operative, it clearly had that effect. The objection to the constitutionality of the Act, will be noticed hereafter, and the village district may be viewed as legally constituted.

The next objection is, that the tax under consideration was not legally assessed. It appears by the proof, that the village district met on the 27th of September, 1848, and, among other matters, voted to authorize the board of agents to purchase a lot of land upon which to erect a building for the accommodation of the high and grammar schools, and to erect the building, and to enlarge and repair the school houses belonging to the district, for the accommodation of the primary schools, and to furnish suitable rooms for the high and grammar schools, until permanent accommodations could be provided, and to hire on the credit of the district, " such sums of money, as may be from time to time needed for the expenditures authorized by the preceding votes, not exceeding five thousand dollars, and to give the necessary evidence of debt therefor." The last vote was adopted unanimously. (St. 1846, c. 208, § 1.) It also appears that this district, at their meeting, on April 17, 1849, voted to raise by taxation, such sum of money, in addition to their proportion of the school money raised by the town, as would be equal to three-fifths of the amount thus apportioned to them by the town. Act of 1846, c. 208; Special Laws, 1848, c. 40, § 2, 3. This vote was certified to the assessors of the town, by the clerk of the district, (R. S. c. 17, § 29,) but the votes passed at the prior meeting of the district, in September, 1848, were not fully and formally certified, either to the assessors, or treasurer of the town. It is urged that this is fatal to the assessment. (Stat. 1846, c. 208, § 3.) These sections of the statutes are directory to the clerks of school districts, and should be observed by them ; and they would be responsible for the omission of the duties therein prescribed. But if the assessors, without such formal certificate of the votes to raise money, ascertain and assess the amount actually raised by the district, and proceed legally with their assessment, in all other respects, it would be legal and effective, notwithstanding such neglect of

duty by the clerk of the district.    *Williams* v. *School District in Lunenburg,* 21 Pick. 82.

If, as is contended, the district borrowed the sum of $325, under their vote of September 27, 1848, for *repairing and enlarging* the school houses, and not "for the purpose of erecting a school house, and of purchasing land on which the same may stand," and therefore for an illegal object ; and if this sum was assessed with other money legally granted and voted to be raised, the *assessment* would not thereby be rendered void.    R. S.  c. 14, § 88; c. 17, § 30, 31 ; Stat. 1846, c. 208, § *5, 6.*    But in fact, there were objects specified in the second and third votes of that meeting, for which the district could legally borrow money under the provisions of the sixth vote.    There is nothing in the case, showing whether the money was borrowed for the purpose of erecting a school house, or purchasing land on which to erect it, or for repairing school houses, and furnishing suitable rooms for the high and grammar schools temporarily, unless the subsequent application of it to the latter purposes named should be supposed to indicate the object of borrowing.    The certificate of the clerk of the district cannot have that effect, as it embraces only a part of the votes and proceedings of the meeting. And a misapplication of the money by the board of agents would not affect the validity of the assessments.

Another objection taken is, that the special law of 1848, c. 140, is unconstitutional, and that all proceedings under it are void.    It does not, however, lie with the respondent, as a ministerial officer, to make this objection.    He is not authorized, or required to adjudicate the law.    On a summary hearing on a petition for a *mandamus,* this court will not determine the question of the constitutionality of the law, involving the rights of third persons, but will leave that question to be settled, when properly presented by parties to an action.    For this hearing, we assume that the act is constitutional.    *The People* v. *Collins,* 7 Johns. 549.

I would remark, however, that this act appears to be one of the class of acts, by which the Legislature has authorized

local taxation for local benefits and improvements of a public nature ; and by which counties, towns, parishes, and school districts have been empowered, from the organization of our State government, (to date back no further,) to raise money to erect public buildings, to relieve the poor, and construct bridges and highways, to· support religious worship, to establish and support schools, and to defray incidental charges. The taxation in all such cases, will necessarily be local, and when compared with other portions of the community, unequal ; yet they have been held to be constitutional, and among the ordinary and most useful class of enactments. *Norwich* v. *County Commissioners of Hampshire*, 13 Pick. 60 ; *Thomas* v. *Leland*, 24 Wend. 65 ; *School District No. 1, in Greene*, v. *Bailey*, 12 Maine, 254 ; *Bussey* v. *Gilmore*, 3 Maine, 191 ; *Ford* v. *Clough*, 8 Maine, 334 ; *Hooper* v. *Emery*, 14 Maine, 375 ; *Baileyville* v. *Lowell*, 20 Maine, 178 ; *Kellar* v. *Savage*, 17 Maine, 444.

The petitioners are agents for the corporation, and the district prosecutes this petition through them. The objection, therefore, founded on the supposed want of proper parties, is not available. *Waldron* v. *Lee*, 5 Pick. 323.

We have thus noticed the principal objections ; but there are considerations which lie at the foundation of these proceedings, that may be properly suggested at this time. A public officer entrusted with the collection and disbursement of revenue, in any of the departments of the government, has no right to refuse to perform his ministerial duties, prescribed by law, because he may apprehend that others may be injuriously affected by it, or that the law may, possibly, be unconstitutional. He is not responsible for the law, or for the possible wrongs which may result from its execution. He cannot refuse to act, because others may question his right. The individuals to be affected, may not doubt the constitutionality of the law ; or they may waive their supposed rights or wrongs ; or may choose to contest the validity of the enactment, personally. Public policy, as well as public necessity and justice, require prompt and efficient action from such offi-

cers. The State, counties, towns and school districts, must be supplied, in order to accomplish the purposes of their organizations, and the proper officers, in their respective departments, must seasonably furnish the authorized amounts.

The consequences would be ruinous if they could withhold their services, and the necessary means, either from timidity, or captiousness, until all questions of law, which might arise in the performance of their official duties, should first be judicially settled.

The respondent was required by law to issue a warrant of distress against the delinquent collector, without inquiry into the proceedings prior to the assessment and commitment of the tax, and as he has neglected that duty, without sufficient cause, a *peremptory mandamus* must issue.