### SCHOOL-DISTRICT v. CARR & a.

It is not the duty or right of selectmen to inquire into the legality of the vote of a school-district to raise money; but when such vote is certified to them by the district clerk, they should assess the tax, and a *mandamus* lies to enforce performance of that duty.

PETITION, by school-district No. 6, in Orford, for a *mandamus* to compel the defendants, who are selectmen of Orford, to assess certain taxes in accordance with votes of the district to raise money, passed at meetings held June 4, 1881, January 14, 1882, and January 27, 1883, which votes were duly certified by the clerk of the district to the selectmen. The defendants claimed, and offered evidence tending to show, that said votes were all illegal. The evidence was excluded, and the defendants excepted.

*Shirley & Stone*, for the defendants. In *Rogers* v. *Bowen*, 42 N. H. 108, the court say,—"It is the duty of selectmen, before making an assessment, to ascertain whether or not the proceedings of the meeting at which the tax was voted were regular and legal;

and if they were not, they make the assessment at their own risk. Whenever the validity of the assessment is called in question, they must show, for their justification in making it, a legal and binding vote of the district, properly constituted, to raise the money for some legitimate purpose, or they will be held as wrong-doers. The certified copy of the vote raising money, required to be furnished to the selectmen by the clerk of the district within ten days after its passage, is only a notice to the selectmen that their action is required in assessing the tax, but is not in itself sufficient to justify their action, which must rest on the regularity and validity of the proceedings of the meeting of the district at which the vote was adopted. They have thirty days, after receiving the copy, in which to investigate and determine the legality of the vote, and are bound to make such investigation at their peril. If there were no legally constituted district, or if the meeting were not properly notified, or there were nothing in the warrant to authorize the vote, or the money were raised for an illegal or unauthorized purpose, they are not required to make the assessment, and, if they do make it, must be held responsible therefor."

That this is a correct statement of the law of New Hampshire from the time of Chief-Justice Richardson until the decision in *Edes* v. *Boardman*, in 1879, a period of more than sixty-three years, will not be denied. It has been settled by many decisions, and hundreds of judgments resting upon them. *Brackett* v. *Whidden*, 3 N. H. 17, 18; *Tidd* v. *Smith*, 3 N. H. 179, 181; *Gove* v. *Lovering*, 3 N. H. 292, 294; *Johnson* v. *Dole*, 3 N. H. 328; *Adams* v. *Mack*, 3 N. H. 493, 500, 501; *Johnson* v *Dole*, 4 N. H. 478, 480, 481; *Willard* v. *Wetherbee*, 4. N. H. 118, 128; *Cardigan* v. *Page*, 6 N. H. 182; *Nelson* v. *Pierce*, 6 N. H. 194; *Tucker* v. *Aiken*, 7 N. H. 113; *Walker* v. *Cochran*, 8 N. H. 166; *Prop. of Cornish Bridge* v. *Richardson*, 8 N. H. 207; *Smith* v. *Burley*, 9 N. H. 423; *Brewster* v. *Hough*, 10 N. H. 138; *Moore* v. *Wilkins*, 10 N. H. 452; *Bump* v. *Smith*, 11 N. H. 48; *Pickering* v. *Pickering*, 11 N. H. 141, 144; *Pickering* v. *Coleman*, 12 N. H. 148, 152; *Hayes* v. *Hanson*, 12 N. H. 284; *Blake* v. *Sturtevant*, 12 N. H. 567, 573; *Henry* v. *Sargeant*, 13 N. H. 321, 343; *Perry* v. *Buss*, 15 N. H. 222, 226; *Osgood* v. *Welch*, 19 N. H. 105, 108; *Grafton Bank* v. *Kimball*, 20 N. H. 107; *Smith* v. *Bradley*, 20 N. H. 117; *Perley* v. *Parker*, 20 N. H. 263, 271; *Brown* v. *Marsh*, 21 N. H. 81, 93; *Osgood* v. *Blake*, 21 N. H. 550; *Chase* v. *Sparhawk*, 22 N. H. 134; *School District* v. *Sanborn*, 25 N. H. 34; *Osgood* v. *Clark*, 26 N. H. 307; *Rice* v. *Wadsworth*, 27 N. H. 104, 116; *Gordon* v. *Norris*, 29 N. H. 198; *Perkins* v. *Langmaid*, 34 N. H. 315; *Wadsworth* v. *Henniker*, 35 N. H. 189; *Lamprey* v. *Bachelder*, 40 N. H. 522; *Kelley* v. *Noyes*, 43 N. H. 209, 210; *Converse* v. *Porter*, 45 N. H. 385; *Merrill* v. *Plainfield*, 45 N. H. 126; *Neal* v. *Lewis*, 46 N. H. 276, 280; *Fitchburg Railroad* v. *Prescott*, 47 N. H. 62, 70; *Pickering* v. *Coleman*, 53 N. H. 424, 428; *Bailey* v. *Ackerman*, 54 N. H.

527; *Bowles* v. *Clough*, 55 N. H. 389; *Holbrook* v. *Faulkner*, 55 N. II. 311; *Fifield* v. *Swett*, 56 N. H. 432, 436. The court has repeatedly prohibited selectmen by injunction from assessing, collecting, or appropriating the money so raised. *Barr* v. *Deniston*, 19 N. H. 170, 171; *Brown* v. *Marsh*, 21 N. H. 81, 84, 93; *Merrill* v. *Plainfield*, supra.

The decision in *Edes* v. *Boardman* changed the form of the remedy in case of an illegal tax. Selectmen are no longer liable unless they act maliciously. Before, the tax-payer might seek relief by an action on the case, or by trespass, or by petition for abatement. Then, the proceeding for an abatement was cumulative; now, it is exclusive. Then, the selectmen judged at their peril, if the tax-payer so elected,—otherwise, not; now, they act at their peril only in case they act maliciously. But that decision makes no change in the powers or duties of selectmen. The court is not invested by the constitution with authority thus to alter the functions of public officers. That would imply power to remodel the whole form and structure of our state government at will. If selectmen were before vested with the power and charged with the duty of looking into the legality of the votes of a school-district raising money before asesssing the tax, they are now. It is no answer to say that by the decision selectmen are relieved of a personal liability for their mistakes in judgment upon matters of law and fact which had always existed before. The power and duty of those public officers is one thing; the consequences to them of a failure in the discharge of either, and the remedy of the person injured by such failure, is entirely another thing. *Rogers* v. *Bowen* is just as good law since the decision of *Edes* v. *Boardman* as it was before. If it is bad law and ought to be overruled, that remains yet to be done; for most clearly it did not meet such a fate, with the great army of cases which *Edes* v. *Boardman* swept away.

*Bingham, Mitchells & Batchellor*, for the plaintiffs. Selectmen, in the discharge of their duties as assessors of taxes, are ministerial and not judicial officers. Their duties are peremptory, or mandatory, and not discretionary, in their nature; and they may be compelled, by *mandamus*, to assess the taxes authorized by law or voted by any authorized body. High Ex. Leg. Rem., ss. 87, 139, 373, 375; Wood Mand. 24, 25, 26; *People* v. *Shearer*, 30 Cal. 645; *Manor* v. *McCall*, 5 Ga. 522; *People* v. *Auditor-General*, 9 Mich. 134; *People* v. *Bennett*, 54 Barb. 480; *State* v. *Smith*, 11 Wis. 65; *People* v. *Supervisors of Otsego*, 53 Barb. 564—*S. C.*, 51 N. Y. 401; *Wilkinson* v. *Cheatham*, 43 Ga. 258; *People* v. *Supervisors*, 10 Wend. 366; *Supervisors* v. *United States*, 4 Wall. 435.

To hold otherwise, and in accordance with the contention of the defendants in this case, would be attended with results highly inconvenient and dangerous. It would make selectmen exclusive judges of the propriety or impropriety of assessing any and all

taxes voted by towns, school or fire districts, or authorized by the
warrants of the state and county treasurers. It would authorize
them to determine the legality of all meetings in which votes rais-
ing money were passed, and the validity of the votes themselves.
They could try and judicially determine the right to vote of any
person voting in any meeting in which money was raised, and they
would thus exercise supervisory and corrective powers over the
action of supervisors of check-lists, and moderators of town and dis-
trict meetings. They would be given the power to approve and
concur in, or veto, the action of all meetings, so far as votes raising
money were concerned.

CLARK, J.  " The selectmen shall seasonably assess all state and
county taxes for which they have the warrants of the state and
county treasurers respectively ; all taxes duly voted in their towns,
and all school, school-house, and fire district taxes authorized by
law, or by vote of any school or fire district duly certified to them."
G. L., c. 57, s. 3.  The statute is not directory merely, requiring
the assessment to be made, if upon examination and investigation
the selectmen are of the opinion that the tax should be assessed ;
it is mandatory and peremptory, admitting no discretionary refusal
to make an assessment called for in the statutory mode.  No other
method of assessment is provided ; and unless the assessment can
be compelled by *mandamus*, no remedy exists in case of the refusal
of the selectmen to act,—and state, counties, towns, and school-dis-
tricts must be dependent for the means of administering the gov-
ernment upon the judgment of selectmen and tax assessors as to
the legality of the previous votes and proceedings authorizing the
assessment of taxes, from which judgment there is no appeal.
There is nothing in the language of the statute indicating that the
legislature designed to invest selectmen with any such authority,
and if such had been the purpose, it would probably have been
expressed in unequivocal terms.

There is no more authority for assuming that the selectmen are
at liberty to go behind the duly certified votes of the school-district
in this case, than there is for holding that selectmen may go behind
the warrants of the state and county treasurers to inquire into the
constitutionality of legislative acts and the legality of the doings
of the county convention before assessing the state and county
taxes, and refuse to make the assessment if in their judgment the
taxes are not legally ordered.  Such a doctrine, which would sub-
mit to the determination of a tribunal from whose decision there
can be no appeal, without trial, notice, or judicial investigation,
the constitutionality of laws and the legality of votes involving
important public and private interests, might lead to serious embar-
rassment in the administration of public affairs, and is not to be
established unless clearly within the scope of the statute.

The reasons urged in support of a discretionary power in the

assessment of taxes, when selectmen were held responsible for unconstitutional laws and illegal votes to the extent of being liable for taxes assessed in pursuance of such laws and votes, and compulsorily paid to the town, without remedy against the town *( Wadsworth v. Henniker*, 35 N. H. 189), no longer exist. The language of the court, in *Rogers* v. *Bowen*, 42 N. H. 108, that " It is the duty of selectmen, before making an assessment, to ascertain whether or not the proceedings of the meeting at which the tax was voted were regular and legal; and if they were not, they make the assessment at their own risk," is not a correct statement of the law. This case, and others cited by the defendants, being based upon an erroneous theory of the responsibility of the tax assessors for errors of law or fact in the assessment, do not vest selectmen with a discretionary power in the performance of the duty of assessing taxes apparently legally authorized and duly authenticated in conformity to the statute. As selectmen incur no liability in assessing a tax in pursuance of an illegal vote *(Edes* v. *Boardman*, 58 N. H. 580), they cannot justify a refusal to make the assessment because the legality of the vote is questioned or doubted.

The evidence introduced by the plaintiff showed, *prima facie,* legal votes by the district to raise money for purposes authorized by law, duly certified to the defendants as selectmen, and their refusal to assess the taxes required. It was the imperative statutory duty of the defendants seasonably to assess the taxes authorized by the votes of the district, and duly certified to them. If the facts were as claimed by the defendants, they were not relieved from the duty of assessing the taxes. They were not the tribunal to determine the legality of the votes. The assessment would conclude the rights of no one. The refusal to make it would conclude the rights of the district and all parties interested, without trial or judicial investigation. The facts which the defendants offered to show, if proved, would be no defence to this petition, and the evidence was properly excluded. "A public officer, entrusted with the collection and disbursement of revenue in any of the departments of the government, has no right to refuse to perform his ministerial duties, prescribed by law, because he may apprehend that others may be injuriously affected by it, or that the law may possibly be unconstitutional. He is not responsible for the law, or for the possible wrong which may result from its execution. He cannot refuse to act because others may question his right. The individuals to be affected may not doubt the constitutionality of the law; or they may waive their supposed rights or wrongs ; or may choose to contest the validity of the enactment personally. Public policy, as well as public necessity and justice, requires prompt and efficient action from such officers. The state, counties, towns, and school-districts must be supplied in order to accomplish the purposes of their organizations, and the proper officers in their respective departments must seasonably furnish the authorized amounts.

The consequences would be ruinous if they could withhold their services and the necessary means, either from timidity or captiousness, until all questions of law which might arise in the performance of their official duties should first be judicially settled." *Smyth* v. *Titcomb*, 31 Me. 272, 286. These considerations furnish sufficient reasons why selectmen should not be required or permitted to delay the assessment of a tax, duly certified and apparently legal, to inquire into the legality of the vote calling for the assessment, however it may be in case of a vote manifestly illegal on its face.

For similar reasons the motion of the tax-payers for leave to appear was properly denied. If allowed to appear, no defence would be open to them except such as could be made by the defendants. *Carlton* v. *Patterson*, 29 N. H. 580, 586; *Mathewson* v. *Powder Works*, 44 N. H. 289, 293 ; *Dorr* v. *Leach*, 58 N. H. 18. No rights of theirs can be concluded by the assessment of the tax. The assessment will not interfere with the person or property of the party assessed. *Perry* v. *Buss*, 15 N. H. 222, 225. The tax-payers have an ample and appropriate remedy for the correction of errors of law or of fact by an appeal from the assessment *(Edes* v. *Boardman, supra)*, and there is no occasion or necessity for allowing them in this proceeding to obstruct the course of public education, suspend the legitimate business of the school-district, and defeat the purposes for which it was created, by delaying the assessment and withholding needed funds until all questions affecting the legality of the votes can be judicially determined. A practice so liable to abuse, and so productive of needless delay, confusion, and uncertainty in the assessment of taxes for governmental and educational purposes, ought not to be established.

The objection suggested in the argument, that the petition cannot be maintained because it was not authorized by vote of the district, was not raised at the trial. The case does not show there was no such vote. It cannot be assumed that the objection would not have been obviated by evidence if it had been seasonably presented. A peremptory *mandamus* should issue to the present board of selectmen. High Ex. Rem., s. 441.

*Peremptory mandamus ordered.*

STANLEY, J., did not sit : the others concurred.