People *ex rel.* Ward agt. Asten.

# N. Y. COMMON PLEAS.

The People *ex rel.* Montague Ward agt. Thomas B. Asten and others, The Board of Assessors (in the matter of closing Bloomingdale Road).

*Power to lay out and close streets in the city of New York.*

A statute giving the power to lay out, alter, amend or repair public streets, is comprehensive enough to include any change or alteration in the grade.

The board of assessors of the city of New York possesses all the power, and is charged with all the duties, in relation to the making of assessments for local improvements, theretofore possessed by the bureau of assessments in the street department, or the assessors appointed by the common council, with the additional power to assess for "all improvements directed by a corporation ordinance," words broad enough to include an estimate for loss occasioned by reason of the change of grade of a street.

In the interpretation of the various special statutes relating to the improvement of streets in the city of New York, the following maxims should be applied :

I. That statutes are to be interpreted according to the intent, and not necessarily according to the letter.

II. That, where the words are obscure, so that the intent does not clearly appear, it may be inferred from the cause or necessity of the statute.

III. That it is the duty of the courts to construe a statute so as to meet the mischief and advance the remedy.

IV. That, where the provision of a statute is general, every thing which is necessary to make the provision effectual is supplied by the common law.

V. That all statutes, *in pari materia*, are to be read and construed together, as if they formed parts of the same statute, and were enacted at the same time.

VI. That, where the intent or the mischief intended to be remedied is plain, but the remedy, from the words used, is somewhat obscure, that construction is to be given which will give full effect to the intent, and not that which will render it void and inoperative.

People *ex rel.* Ward agt. Asten.

Where provision is made by statute for estimating or assessing damages done by the change of grade of a street, or the closing of a public highway, anyone interested in the exercise of the power can obtain the writ of mandamus.

It is no valid objection to the granting of the writ of mandamus, to compel the assessors to act in such case, that application therefor is made by only one owner interested; any person interested can apply for the writ, if, in the general proceeding contemplated by the statute, he has a separate pecuniary interest.

Under the acts in relation to the changes of grade of streets, and closing of old streets, in the city of New York, by the Central park commissioners, within certain districts, it is the duty of the board of assessors to estimate the damage done the land, or improvements of adjoining owners which front thereon.

Where the Central park commissioners have closed a street or road in the city of New York, within the district specified in the acts establishing their powers, it is the duty of the board of assessors to assess the damage done each parcel of land or building, existing thereon at the time of the passage of the statute, but, in all cases outside of such district, where the common council have directed the closing a street or road, damages done to adjoining property must be ascertained by commissioners to be appointed by the supreme court.

The board of revision and correction of assessment lists, established under chapter 308, Laws of 1861, has succeeded to the powers theretofore possessed by the common council, in relation to the ratification and confirmation of assessment lists, and an assessment list, when ratified or confirmed, as provided in the act of 1861, chapter 308, is final and conclusive.

*General Term, June,* 1875.

APPEAL from order granting peremptory mandamus.

On the 25th day of April, 1874, the relator, through his attorney, James A. Deering, Esq., gave notice of a motion to be made on the 5th day of May, 1874, for a peremptory mandamus against the board of assessors of the city of New York, directing them to estimate the damage done the relator's property by reason of the closing of Bloomingdale road, between Manhattan street and One Hundred and Twenty-seventh street, in said city, under and pursuant to chapter 697 of the Laws of 1867.

The affidavit stated in substance that the relator was the

People *ex rel.* Ward agt. Asten.

owner in fee of two lots, with the buildings thereon fronting on Bloomingdale road, between the above named streets ; that Bloomingdale road was laid out as a public highway, pursuant to an act passed June 19th, 1703, as appears by Rutger's map of 1766–1767, the survey of Maerschalk, in 1790, and other surveys and maps on file in the offices of the corporation ; that said road was kept and continued as a, public highway ; that while said road was continued as such highway, the relator erected several buildings fronting upon said road, and that the only means of ingress thereto and egress therefrom was by means of said road.

The relator further stated that the legislature, on the 24th day of April, 1867, passed an act by which the commissioners of the Central park were empowered to designate what parts of existing streets should be closed and abandoned in certain parts of the city, and to make and file maps showing the streets, avenues, &c., and that all streets not shown on such maps should cease thereafter to be such streets, avenues, &c., and that the said Bloomingdale road, in front of the relator's premises, was included in the said district and was not shown on the said maps, and consequently became closed. The relator further alleged that by the third section of chapter 697 of the Laws of 1867, it was provided that all damages to any land or building, by reason of the closing of "any street, avenue or road laid out on the map of the city of New York, within the district specified," should be ascertained and paid in the manner specified in sections 3 and 4 of the act of March 4, 1852, as in the case of the change of grades of streets ; that the relator's damages amounted to the sum of $10,500, for the allowance of which the relator had applied to the board of assessors, which board refused to act.

J. F. DALY, *J.* — The board of assessors was created by the act of 1859 (*chap.* 302, *sec.* 15). Their duties are to make "estimates and assessments required by law for building wells, erecting pumps, pitching, paving, regulating and repairing

streets, constructing sewers, fencing vacant lots and public
slips, and all other improvements directed by corporation
ordinance, for which an assessment is to be made." Before
the creation of this permanent board by the act of 1859, all
such estimates and assessments were made by assessors,
specially appointed by the common council, when each im-
provement, for which estimate and assessment was to be made,
had been ordered by the common council (*act of* 1813, *chap.*
86, *sec.* 175), and the object of the creation of this board was
to institute a permanent body to perform all the duties for
which assessors were specially appointed before the act of
1859.

The general authority to the board to make the estimates
and assessments "for all improvements directed by corpora-
tion ordinances for which an assessment is to be made," would
include the making of assessments of expense and loss in the
changing of the grade of streets, under the act of 1852
(*chap.* 52), because the changing of grade is an improvement
within the power of the common council to order, and the
making of the assessment of the expense would be by asses-
sors appointed for the purpose by the common council, if the
subsequent act of 1859 had not created a board of assessors
to perform that duty.

The act of 1852, therefore, should be read as if amended
by the act of 1859, by the substitution of the board of asses-
sors to make the estimates and assessments required, and
when the act of 1867 (*chap.* 697, *sec.* 3), relative to the closing
of certain streets, roads, &c., provided that the damages caused
by the closing of any road under the provisions of that act,
should be ascertained in the manner provided by the third and
fourth sections of the act of 1852 above mentioned, it was in
effect a direction to the board of assessors to make such esti-
mates and assessments as might be required. The act of 1867,
by direct implication, conferred new and further powers upon
the board of assessors, adequate to the performance of the
new duties thus imposed for this particular purpose. It is

only by such a construction of the acts in question that effect can be given to an express provision by the legislature, intended for the benefit of persons injured or affected by the exercise of the sovereign power in the act of 1867.

Although the proceedings in the case of assessments for, and estimates of damage upon the closing of the roads under the act of 1867, do not closely resemble those upon the change of grade, the provisions in the acts of 1852 and 1813 must be followed as far as may be. The damage sustained by the adjoining owners, by the closing of the Bloomingdale road, can be ascertained (and although there is no estimate of expenses of such closing, to which they can be added, as in the case of changing grade), they can be assessed and paid alone, and the estimate of damage may be made with reference to the benefit received by the adjoining owners, by the reversion to them of the road so closed.

Application granted.

*William Barnes & E. Delafield Smith,* counsel to the corporation, for appellants.

I. Mandamus is not the appropriate remedy (*Ex parte Ostrander,* 1 *Denio,* 682; *Board of Health* agt. *Heister,* 37 *N. Y.,* 672; *Darlington* agt. *Mayor,* 31 *id.,* 164; *People* agt. *Kerr,* 27 *id.,* 188; *People* agt. *Dowling,* 55 *Barb.,* 197; 26 *Wend.,* 658; 2 *Cow.,* 438; 18 *Wend.,* 78; *People ex rel. Opdyke* agt. *Brennan,* 39 *Barb.,* 651; *People* agt. *Croton Aq. Board,* 49 *id.,* 261). The power of the court is discretionary (1 *Cow.,* 501; 13 *Barb.,* 432; 15 *id.,* 607; 49 *id.,* 259; 2 *Abb. Pr.* [*N. S.*], 78; 1 *Wend.,* 318).

II. A mandamus should not be granted where a party has allowed sufficient time to pass before he makes his application (*People ex rel. Olmstead* agt. *Supervisor,* 12 *Barb.,* 446; *People* agt. *Delaware C. P.,* 2 *Wend.,* 256; *Beach* agt. *Seneca C. P.,* 2 *id.,* 264).

III. The board of assessors are not by any act expressly

authorized to estimate damages resulting from the closing of a street or road (*Chap.* 302, *Laws* 1859, § 15; § 175, *chap.* 86, *Laws* 1813).

IV. Under the act of 1813, 1852 and 1867, a single assessment only can be made covering all the owners entitled to damages; the order of special term directing a separate estimate of the relator's damages, is, therefore, irregular.

V. Under section 3, chapter 697, Laws 1867, and sections 2 and 3, chapter 52, Laws 1852, the board of assessors are not authorized to make any separate assessment (FOLGER, *J.,* in *Brooklyn* agt. *Armstrong,* 45 *N. Y.,* 245; *Smith* agt. *Boston,* 7 *Cush.,* 254; *Gould* agt. *H. R. R. R. Co.,* 6 *N. Y.,* 522; *Radcliff* agt. *Mayor,* 4 *id.,* 195; *Wilson* agt. *Mayor,* 1 *Denio,* 595; *Lansing* agt. *Smith,* 8 *Cow.,* 149; *Laws* 1818, *chap.* 213; § 175, *chap.* 86, *Laws* 1813).

VI. Bloomingdale road was not laid out on the map of the city of New York (*Chap.* 115, *Laws* 1807; *Report of Com., March* 22, 1811; *Valentine's Laws, pp.* 809, 810; *Fearing* agt. *Irving,* 4 *Daly Rep.,* 386; *Chap.* 160, *Laws* 1816; *Chap.* 213, *Laws* 1818; *Chap.* 52, *Laws* 1852; *Chap.* 565, *Laws* 1865; *Chap.* 367, *Laws* 1867).

*James A. Deering,* for relator, respondent.

I. Mandamus is the appropriate remedy to enforce the right of the relator (THOMPSON, *J.,* in *Commonwealth* agt. *Allegany,* 37 *Pa. St.,* 277; DENIO, *J., People* agt. *Mead,* 24 *N. Y.,* 119; TANEY, *C. J., Commonwealth* agt. *Dennison,* 24 *How.* [*U. S.*], 66; *Commonwealth* agt. *Pittsburgh,* 34 *Pa. St.,* 496; *Stephens' Nisi Prius,* 2292; *Dillon on Mun. Corp.,* § 666; *People* agt. *Mayor,* 10 *Wend.,* 393; *Rex* agt. *Railway Co.,* 2 *B. & A.,* 646; *Ex parte Robins,* 7 *Dowl.,* 566; *Buck* agt. *Lockport,* 6 *Lans.,* 251; *McCullough* agt. *Mayor,* 23 *Wend.,* 458; *Ex parte Lynch,* 2 *Hill,* 45; *People* agt. *Judges,* 20 *Wend.,* 658).

It is conceded that the relator has no remedy by suit or

action (*Dillon on Mun. Corp.*, 782; *Callender* agt. *Marsh* [*leading case*], 1 *Pick.*, 418; *Radcliff's Ex'rs* agt. *Mayor*, 4 *Comst.*, 195; *Graves* agt. *Otis*, 2 *Hill*, 466; *Wilson* agt. *Mayor*, 1 *Denio*, 595; *Mills* agt. *Brooklyn*, 32 *N. Y.*, 489; *Roeck* agt. *Newark*, 33 *N. J. Law*, 129; *Coster* agt. *Mayor*, 43 *N. Y.*, 399; *Waddell* agt. *Mayor*, 8 *Barb.*, 95).

II. The authority and power given to the board of assessors by chapter 697, Laws 1867, is full and ample. The right of the relator is clear beyond doubt (*Chap.* 697, *Laws* 1867, *sec.* 3; *Chap.* 302, *Laws* 1859, *secs.* 15 *and* 17; *Chap.* 52, *Laws* 1852, *sec.* 3; *Chap.* 508, *Laws* 1853, *sec.* 2; *Laws* 1851, *chap.* 430; *Charter* 1849, *ch.* 12; *Ordinance*, 1839, *c. v., title* 7; *Chap.* 86, *Laws* 1813, *sec.* 175; *Laws* 1801, *chap.* 129; *Laws* 1787, *chap.* 88; *Dongan & Montgomery charters, Valentine's Laws, p.* 320).

III. It is no objection to granting the writ that but one person interested applies. It is not necessary that all interested should join (*Chap.* 52, *Laws* 1852; *People* agt. *Common Council*, 20 *How. Pr. Rep.*, 491; *Roeck* agt. *Newark*, 33 *N. J. Law*, 129; *Ex parte Jennings*, 6 *Cow.*, 518, 579; *People* agt. *Supervisors*, 5 *Cow.*, 592; *Matter of Trustees*, 1 *Barb.*, 34).

IV. A peremptory writ is proper where, there is no disputed question of fact (*People* agt. *Contracting Board*, 27 *N. Y.*, 378; *Crary's Practice*, 286; *Tapping on Mandamus*).

V. The order of the special term should be affirmed.

DALY, *C. J.* — The act of 1867 declares that all damages to any land or building by reason of the closing of any street referred to in the act, shall be ascertained and paid in the manner specified in the third and fourth sections of the act of 1852.

These sections in the act of 1852 do not provide for the ascertaining and paying any damage from the closing of a street but for such as may arise thereafter from altering or

changing in whole or in part the grade of any street. What is referred to evidently, therefore, in the act of 1867, is the mode of ascertaining and paying damage in the act of 1852, which was by estimating the loss or damage of each owner of land by the assessors appointed to estimate the expense of the change of grade. And to ascertain who these assessors were when the act of 1852 was passed, and who they were when this act of 1867 was passed, it will be necessary to review the state of the statutory law upon this subject when the act of 1852 was passed, and the changes made in it afterward, down to the time of the passage of the act of 1867. By the Dongan and Montgomery charters, the corporation had the power to direct the "laying out of streets," and also the power of altering, amending or repairing streets, words comprehensive enough to include any change or alteration in the grade (*Kent's charter, pp.* 15, 100, 235, 237). By the act of 1787 (*chap.* 88) this power was further recognized, and the common council were authorized to appoint two persons to be the surveyors of buildings, streets, wharfs, &c., and to see that they were laid out, altered, &c., so as to be regulated with uniformity, according to the ordinances of the corporation; and the corporation were authorized to take the ground of any private person for such purposes, whose damage was to be assessed by a jury. By the act of 1801 (*chap.* 129) the corporation were further empowered to make by-laws or orders for regulating and altering the streets, as well as other matters, and to appoint five freeholders to estimate the expense and make a just and equitable assessment of it upon the owner or occupants of houses benefited. And by the act of 1813 (*sec.* 175), the assessment for the "altering or amending" of streets, instead of being made by five freeholders, was to be made by such skillful, competent and disinterested persons as the common council might think proper to appoint. Under this latter authority, the common council generally appointed three persons; and by the ordinances of 1839 (*chap.* 5, *title* 7) the street commissioner and the assistant street commissioner

and the first clerk in the street commissioner's office were required to perform the duties of assessors, in estimating, among other matters therein specified, the expense of reopening streets, and, as such assessors, were required to take an oath that they would make an estimate and the assessment fairly and impartially. After the adoption of the amended charter of 1849 (*chap.* 12), a bureau of assessment was created in the street department, the regulation of streets being continued, first by the ordinances of 1839 (*chap.* 6), afterward by the amended charter of 1849, to the "street department." After 1849, and before the enactment of the statute of 1852, officers of the bureau of assessments were known by the name of the "assessors of the street department," and are referred to by that name in the statute of 1851 (*chap.* 430) and 1853 (*chap.* 508), who were authorized and who did both make and collect the assessments connected with the regulation of streets. When the act of 1852, therefore, refers to the assessors appointed to estimate and assess the expense of conforming to any change of grade that might thereafter be established, it means the officers now referred to and then known by the statutory designation of the "assessors of the street department."

The act of 1852 restricted the common council from making any change of grade south of Sixty-third street, except with the written consent of at least two-thirds of the owners of the land, and it required what had never been required before, except where the change of grade had become necessary by the opening of the street, that an estimate should be made of the loss and damage sustained by each owner of the land fronting on the street the grade of which was to be changed, which additional duty it imposed upon the assessors who were to estimate the expense of the improvement, by requiring them to make a just and equitable award of the amount of the damage to each owner.

By the act of 1816 (*chap.* 160), provision was made for ascertaining the damage sustained by the owners of land where a

new regulation in the elevation or depression of the street had become necessary in consequence of the opening and improvement of a street in the compactly built part of the city, under which act the damages were to be ascertained by "the commissioners of estimate and assessment," appointed by the supreme court under the act of 1813 (*chap.* 176), for the opening and laying out of any street, avenue, square or public place in the city. It is very clear that these are not the persons referred to in the act of 1852, for they were not known by the name of " assessors," but by that of " commissioners," the name by which they are still designated, and they assessed damage for a change of grade only in the case where it became necessary in consequence of an opening of a street.

By the act of 1818 (*chap.* 213), provision was made for ascertaining and paying the damage to the owners of land caused by the closing of streets, which is to be ascertained *by three commissioners of estimate* to be appointed by the supreme court. It is equally evident that they are not the persons referred to, for they are not denominated " assessors," but " commissioners of estimate," and they could not have been intended by the act of 1867, for the act does not refer to the act under which they were appointed, but declares the damage shall be ascertained and paid in the manner specified in the third and fourth sections of the act of 1852, and those sections, as I have said, specified the assessors appointed to estimate and assess the expense of conforming to a change of grade. This was the state of the statutory law when the act of 1852 was passed. At the time, by the amended charter of 1849 (*sec.* 12), there was an executive department called the street department, which, by the provisions of the amended charter, had cognizance of the opening, regulating and paving streets ; " when done by assessment," terms which embrace any change or alteration in the grade, and the bureau for the collection of assessments, attached by that amended charter to the street department, made the assessment list, as appears by the acts of 1851 and 1853, as before referred to ;

for in the act of 1853 (*chap.* 508, *sec.* 2), a specific compensation is given to them for their services for making such assessment on the confirmation of the assessment list. And this state of things lasted until the passage of the act of 1859 (*chap.* 302, *sec.* 15), which created a board of assessors to be appointed by the commissioners of taxes and assessments, which board was thereafter charged with the duty of making estimates and assessments required by law for building wells, erecting pumps, pitching, paving, regulating and repairing streets, fencing vacant lots and public slips, and all *other improvements* directed by corporation ordinance, for which an assessment may be made, and all previous statutes inconsistent with this act were repealed.

This repealed so much of the act of 1813 (*chap.* 86), as authorized the common council to appoint persons to estimate and assess the expense for regulating or altering any street, or the pitching or paving of it, or any of the improvements provided for by the 175th section of that act, the "board of assessors" being thereafter substituted for the assessors who were up to that time either appointed by the common council or by the ordinance of 1839, or existed as a bureau in the street department under the act of 1849. This board of assessors, under the act of 1859, are, in addition to what are enumerated, to assess "*all other improvements*" directed by a corporation ordinance." A change in the grade of a street is an improvement within the meaning of these words, and an improvement which can be directed to be made by a corporation ordinance; so that they have in this respect the same power which the assessors formerly had who were appointed by the common council or who acted as a bureau of the street department.

That the officers designated in the act of 1851 as the "assessors of the street department" did make the assessments for the change of grade or for any alteration in the regulation of a street, I infer, not only from the provision in the act of 1853, giving them compensation for their services in making

assessments, but from the fact that three officials attached to the street department, the street commissioner, his assistant, and the first clerk in the department, were required by the ordinance of 1839, before referred to, to perform the duties of assessors in making, among other things, the estimates for the expense of repairing streets when done by the order of the common council, and to make the *assessment* for such expense among the owners and occupants of houses to be benefited thereby, which by the ordinance they were to do without charge; but for which they were compensated by the acts of 1851 and 1853, before referred to. I infer that they continued in the exercise of this duty down to the passage of the act of 1859, creating the board of assessors, as I find nothing showing that the ordinance of 1839 was repealed until the revision of the ordinance in May, 1859, one month after the passage of the act of 1859, in which revised ordinances this provision of the ordinance of 1839 was omitted, for the reason that the act of 1859 had created a new body, the board of assessors, who were thereafter to make all the estimates and assessments for improvements directed by a corporation ordinance.

The legislature, when they passed the act of 1867, must be assumed to have known all the prior legislation and the state of the statutory laws relating to streets in the city of New York as it existed when the act of 1867 was passed; that is, they must be assumed to have known that under the act of 1813, there were assessors for ascertaining the expense of such improvements directed by the corporation as the regulation or altering of streets; commissioners for ascertaining the damage to land owners by elevating or. depressing the grade of a street in consequence of the opening of a new street, and that they were the commissioners appointed by the supreme court for the opening of the street; that when a street was closed the damages to landholders were ascertained by commissioners of estimate appointed by the supreme court; that under the amended charter of 1849, a bureau for the col-

People *ex rel.* Ward agt. Asten.

lection of assessments was created; that by the act of 1851, an organization was recognized as existing in the street department known as the "assessors of the street department;" that the street department had, under the amended charter of 1857 (*chap.* 187), cognizance of "altering, grading and regulating" of streets, and that by the act of 1859, the board of assessors, which was then created, succeeded to all the powers in respect to assessments for altering, grading and regulating of streets under corporation ordinances which the assessors appointed by the common council had under the act of 1813, or the assessors of the street department under the amended charters of 1849 or 1857.

There are certain maxims in the interpretation of statutes to be applied to this case which I will briefly enumerate:

I. That statutes are to be interpreted according to the intent and not necessarily according to the letter.

II. That when the words are obscure, so that the intent does not clearly appear, it may be inferred from the cause or necessity of the statute.

III. That it is the duty of the courts to construe a statute so as to meet the mischief and advance the remedy.

IV. That where the provision of a statute is general, every thing which is necessary to make the provision effectual is supplied by the common law.

V. That all statutes *in pari materia* are to be read and construed together as if they formed parts of the same statute and were enacted at the same time.

VI. That where the intent, or the mischief intended to be remedied, is plain, but the remedy from the words used is somewhat obscure, that construction is to be given, if it be possible, which will give full effect to the intent, and not that which will render it void and inoperative (*Potter's Dwarris and the authorities there cited, chap.* 5).

The intent of the act of 1867 is very plain. It is, that the damage to any land, building or structure by reason of the closing of a street or the altering the grade of a street within

the district specified, shall be ascertained and paid. The manner in which it is to be ascertained and paid is the only thing in respect to which there can be any doubt. It is to be in the manner specified in the third and fourth sections of the act of 1852, that is, that the damages are to be ascertained by the assessors appointed to estimate the expense of a change of grade, and if there were no persons known by that name when the act of 1867 was passed, then it must mean the official persons who have succeeded to and who then performed that duty by whatever name they were known. If there were such officials when this act of 1867 was passed, then there is no difficulty in giving effect to and carrying out the intent of the act. The board of assessors created in 1859 have authority to estimate the expense of improvements ordered by the corporation other than specifically enumerated in the act creating that board and defining its powers. A change in a grade of a street is not among the matters specifically enumerated, but it is embraced by the language at the close of the section, " and all other improvements directed by corporation ordinances for which an assessment may be made." Upon this point I have not the slightest doubt.

It is not only within the powers but it is the duty of this board to estimate and assess the expenses if a change in the grade of a street is directed by the corporation in a part of the city where they have the power to do so. This being the case the board of assessors is the body to ascertain the damage arising from the closing of a street or the changing of a grade of one, in pursuance of the authority conferred by the act of 1867, within the district specified in that act, and they are to do it in the manner required by the act of 1852 by making a just and equitable award of the amount of the loss and damage to the owners of the land upon the street heretofore known as the Bloomingdale road, which has been closed under the act of 1867.

It is objected to this mandamus that they are required to ascertain the plaintiff's loss and damage, and that under all

the acts there is to be but one general proceeding in which the loss and damage of each person is to be ascertained. Let them then go on and do this, and, when they have done so, the specific amount to be awarded to the plaintiff will be ascertained. I apprehend that this is not the difficulty, that it has been the doubt as to the authority, in respect to which they very properly applied to the corporation counsel, and that officer, instead of giving any opinion as to how the positive provision of the statute that the damage to the land owners from the closing of the street is to be ascertained and paid was to be complied with, told the board of assessors that he had no doubt that that was the intent of the act, but that he doubted whether the object had been accomplished by the enactment, and that, in view of the doubt he entertained as to their jurisdiction, that he could not advise them to act. He has set forth in his opinion the grounds upon which the doubt is founded, and, in my judgment, it has no bearing whatever upon the question.

It is substantially this: That the expense of the surveys and maps, by the filing of which the street is closed, is not paid by assessment, but by money to be ultimately raised by taxation; that when, under the act of 1852, the assessors, who, under the act of 1813, were to estimate the expenses of a change of grade, are, in addition to that to estimate the loss and damages of owners affected by the change of grade, to make a just and equitable award to each of such owners; that the amount so awarded is to be included in the expense of such proceeding; that an assessment of such expense, including the amount awarded for loss and damage, is to be assessed upon the owners or occupants of houses and lots intended to be benefited by the improvement, and that four months after the ratification of such assessment by the common council, the amount awarded to such owner is to be paid by the corporation (*Laws of* 1813, *chap.* 86 *to* 175; *of* 1852, *chap.* 53, *secs.* 3 *and* 4; *and of* 1867, *chap.* 697 *to* 3); that, as there is no occasion for assessors, nor is there any

assessment, under the act of 1867, for the expense incurred by the commissioners of the Central park in making surveys, and the preparation of maps, there is not, in the language of the act of 1852, "assessors appointed to. estimate and assess the expense," and, therefore, the doubt whether this provision for ascertaining and paying the loss and damage to owners by the closing of the street is not only ineffectual, inoperative and void. I utterly fail to see the sequence in this reasoning. It by no means follows that the provisions in the act of 1867 cannot be carried out, because there is to be no assessment upon the owners of lands benefited for the expense incurred by the commissioners of the Central park, in having surveys made and maps prepared and filed, to enable them to close the street. This provision is itself an assessment; an assessment, in its general signification, is to ascertain, settle and fix an amount to which a party is subject, as his proportionate part in a tax, or which he is to pay as damages, and where the corporation are by statute, to pay any part of the value of buildings taken for public improvement, it is, in respect to them, called in the statute an assessment (*Laws of* 1813, *chap.* 86, *sec.* 178 ; *Laws of* 1813, *chap*, 213, *sec.* 10).

This provision contemplates that damage will or may accrue to land, or the building or structures upon it, by the closing of the street, and that it is to be ascertained and paid. When it declares that it shall be ascertained and paid in the manner specified in the act of 1852, it means that it shall be estimated as the loss and damage to the owners of land fronting upon a street is estimated under the act of 1852, when a change is made in the grade of a street; that is, by making a just and equitable award of the amount of loss and damage which each owner of land fronting on the street will sustain by reason of the change ; that it is to be made by the officials who, when the act of 1867 was passed, had succeeded to and exercised the same powers as the officials referred to in the act of 1852 ; that it is and was to be an assessment fixing the amount to be awarded to each owner who will sustain loss

and injury by the change; that, as such assessment, it is to be certified to the board of revision and correction, by the act of 1861 (*chap.* 308), which, in this respect, has succeeded to the powers of the common council, and, when ratified by them, is binding and conclusive; and that, four months after the ratification, the amount of the respective awards are to be paid by the corporation (*Laws of* 1852, *chap.* 52, *secs.* 3, 4; *of* 1813, *chap.* 86, *sec.* 175).

In this way, in my judgment, the act can be fully carried out without doing violence to, setting at nought, or in any way impairing any statutory provisions existing when the act of 1867 was passed.

The order appealed from should be affirmed.

I concur, F. W. L.

I concur, R. L. L.

Filed in open court 12th March, 1875.

*Affirmed in court of appeals, June,* 1875, *on opinion of* DALY, C. J., *at general term.*