THE PEOPLE OF THE STATE OF NEW YORK ex rel. AUGUSTUS BOCKES, APPELLANT, v. EDWARD WEMPLE, COMPTROLLER OF THE STATE OF NEW YORK, RESPONDENT.

*Judge of the Supreme Court — retired under section 13 of article 6 of the Constitution of New York — amount of his compensation.*

The object of the provision of section 9 of chapter 408 of the Laws of 1870, in giving a *per diem* allowance of five dollars to judges of the Supreme Court, while officially engaged away from their homes, was to pay or provide for their expenses, and was in addition to their salary or compensation for services as judges; and the provisions upon this subject of the subsequent act (chap. 541 of 1872), giving a gross sum of $1,200, to be paid to the judges annually, in lieu of, and in full of all expenses allowed by law, did not make this sum of $1,200 a part of the compensation of the judges, within the meaning of that word as used in section 13 of article 6 of the Constitution of the State of New York, in such wise that such sum of $1,200 given to a judge of the Supreme Court retired under section 13 of article 6 of the Constitution, must "be continued during the remainder of the term for which he was elected."

The provision of chapter 270 of the Laws of 1888, "for compensation of justices of the Supreme Court, whose terms of office are abridged under the provisions of section 13 of article 6 of the Constitution, and who shall have served as such justices for ten years, twelve thousand dollars," does not authorize the payment of the sum of $1,200 in addition to the compensation of $6,000 to such justices.

APPEAL by the relator from an order of the Supreme Court, made at the Albany Special Term and entered in the clerk's office in the county of Albany on the 18th day of March, 1889, which denied a motion, made by the relator for an order for a peremptory writ of *mandamus* to be issued to the comptroller of the State of New York, directing him to draw his warrant upon the treasurer of the State for the sum of $300, which became due to the above-

named relator, Augustus Bockes, on the 1st day of April, 1888; and for the further sum of $300, which became due to said Bockes on the 1st day of July, 1888; and for the further sum of $300, which became due to said Bockes on the 1st day of October, 1888, under the Constitution and laws of the State of New York, as compensation in lieu of expenses under chapter 541 of the Laws of 1872.

The following opinion was written at Special Term:

MAYHAM, J. The relator who, for more than ten years prior to January 1, 1888, had served as justice of the Supreme Court in the fourth judicial district, having been last elected to said office at a general election in 1875, and entered upon the term of fourteen years from that date, was by reason of his age abridged in his term of service on the first day of January 1888, under the provisions of section 13 of article 6 of the State Constitution, which provides as follows: " The official terms of the said justices and judges, who shall be elected after the adoption of this article, shall be fourteen (14) years from and including the first day of January next after their election. But no person shall hold the office of justice or judge of any court longer than until and including the last day of December next after he shall be (70) seventy years of age. The compensation of every judge of the Court of Appeals and of every justice of the Supreme Court, whose term of office shall be abridged, pursuant to this provision, and who shall have served as such judge or justice ten (10) years or more, shall be continued during the remainder of the term for which he was elected." Since January 1, 1888, the relator has been paid compensation quarterly at the rate of $6,000 per annum, 1,500 per quarter, whereas prior to that time he has been paid at the rate of $7,200 per annum, or $1,800 per quarter.

Before commencing these proceedings the relator duly demanded of the defendant, as comptroller, the auditing and allowing to him, and a warrant for the payment to him, of the additional $300 quarterly, for the quarters ending April, July and September, as to which he had been paid $1,500 instead of $1,800, as claimed by him. With this demand the comptroller refused to comply, on the ground that the relator was not lawfully entitled to receive the same. The relator now asks for a peremptory *mandamus* to compel the comptroller to certify and pay such claim. Section 14 of article 6

of the Constitution provides as follows : " The judges and justices hereinbefore mentioned shall receive for their services a compensation to be established by law, which shall not be diminished during their official terms."

Under these constitutional provisions the legislature has, by various enactments, established by law the rate of compensation which judges are entitled to receive, and it is by the interpretation of these statutes that the right of the parties to this controversy must be determined. Section 9, chapter 408 of the Laws of 1870, provides that "the justices of the Supreme Court shall receive an annual compensation of six thousand dollars each, payable quarterly, in lieu of all other compensation. except that they shall receive, in addition to such stated salaries, a *per diem* allowance of five dollars per day for their reasonable expenses, when absent from their homes and engaged in holding any General or Special Term, Circuit Court or Court of Oyer and Terminer, or in attending any convention, as hereinafter provided, to revise the rules of said court."

In the general appropriation bill of 1872 (chap. 541, Laws of 1872) the legislature, after making the appropriation to meet the requirements of chapter 408, Laws of 1870, for salary and expenses of judges, adds this general provision : " The said justices of the Supreme Court, except in the first judicial district, shall receive the sum of twelve hundred dollars, annually, from the first day of January, eighteen hundred and seventy-two, in lieu of and in full of all expenses now allowed by law. This subdivision shall not increase the pay of any judge except the justices of the Supreme Court." In chapter 643, Laws of 1873, and also chapter 373, Laws of 1875, which are the general appropriation bills of these years, the legislature, in speaking of funds raised for paying the judges of the Court of Appeals and justices of the Supreme Court, make use of this language, "for salaries and expenses." In the supply bill for 1888 (chap. 270) the provision is, "for compensation of justices of the Supreme Court, whose terms of office are abridged under the provisions of section thirteen, article six of the Constitution, and who shall have served as such justice for ten (10) years, twelve thousand dollars."

We have above quoted all the statutes and constitutional provisions bearing upon the subject, and from them we must, by the

application of the ordinary rules of construction, gather the intention of the law-makers. Much depends upon the meaning that is to be given in these various acts to the word "compensation," for if this $1,200 per annum, which the relator had always received until the abridgment of his services, was a part of his compensation within the meaning of the word as used in the Constitution (§ 13, art. 6), then it must "be continued during the remainder of the term for which he was elected."

In determining this question the intent of the legislature in enacting the various provisions of the statute upon the subject should first be ascertained and effect be given to the same in harmony with that intent, as the duty of fixing the compensation of the judges was by the Constitution confided to the legislature. The well-settled rules of construing statutes requires them to be read and interpreted according to the natural and most obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. (*Waller* v. *Harris*, 20 Wend., 561.) The rule of construing statutes was very fully, and I think correctly, stated in *People ex rel. Ward* v. *Asten* (49 How. Pr., 417), which was approved and opinion adopted by the Court of Appeals in 62 New York, 623, and while the methods of construction referred to in that decision may not all be applicable to the case, I think, so far as applicable, may, with propriety, be used to aid in ascertaining the legislative intent in enacting the statutes relied upon in this controversy.

The learned judge in that case enumerates the following maxims, which seem elementary in the construction of statutes :

"*First.* That statutes are to be interpreted according to the intent, and not necessarily according to the letters.

"*Second.* That when the words are obscure, so that the intent does not clearly appear, it may be inferred from the cause or necessity of the statute.

"*Third.* That it is the duty of the courts to construe a statute so as to meet the mischief and advance the remedy.

"*Fourth.* That when the provision of a statute is general, everything which is necessary to make the provision effectual is supplied by the common law.

"*Fifth.* That all statutes '*in pari materia*' are to be read and construed together as if they formed parts of the same statute and were enacted at the same time.

"*Sixth.* That when the intent or the mischief intended to be remedied is plain, but the remedy from the words used is somewhat obscure, that construction is to be given, if it be possible, which will give full effect to the intent, and not that which will render it void and inoperative."

Within these rules of interpretation, it is proper to inquire what the intent of the legislature was in providing for a *per diem* allowance of five dollars per day, as that provision is contained in section 9 of chapter 408 of Laws of 1870. The first part of that section provides that the justices of the Supreme Court shall receive an annual compensation of $6,000, payable quarterly, in lieu of all other compensation. Then in the same sentence is the following: "Except that they shall receive, in addition to such stated salaries, a *per diem* allowance of five dollars per day for their reasonable expenses when absent from their homes and engaged in holding any General or Special Term, Circuit Court or Court of Oyer and Terminer, or in attending any convention as hereinafter provided, to revise the rules of said court."

It is contended by the learned counsel for the relator that the word "except," after "compensation" in this section, is a limitation on the preceding phrase, "in lieu of all other compensation," and that what follows the word "except" constitutes a part of the compensation of such justices. It must be conceded that there is great force in this argument; and if the interpretation was to be confined solely to the words used, without regard to the object of the legislation, it might be controlling. But in determining this question, we must, as we have seen, take into account and consider the words used in the light of the object which the legislature had in view, and the end the legislation was intended to accomplish. By the first part of the section they had determined to fix the compensation, which in the same section they call salary, at six (6) thousand dollars. They then provided a fund to meet the expenses of the judges when from home, in the discharge of certain specified official duties, and make that depend entirely upon the contingency of their being from home in the discharge of these duties.

It seems quite clear, therefore, that at the time of enacting chapter 408 of the Laws of 1870, the compensation or salary of the judges of the Supreme Court was limited to $6,000, and that the judges were entitled to receive, in addition thereto, such expenses as they might incur by reason of absence from home on special official business, at the rate of five dollars per day. No one would contend that under that act the judges had a right to a fixed or certain compensation beyond the $6,000. The *per diem* was in no sense compensation for services or a part of the judge's salary. Salary is defined by Webster as " a recompense or consideration stipulated to be paid to a person for services." If I am right in the above conclusion, it follows that the relator would not be entitled to the amount claimed, unless the same can be paid under the provision of chapter 541 of the Laws of 1872. That act after providing the means for paying the salaries and expenses of justices of the Supreme Court, contains the following enactment : " The said justices of the Supreme Court, except in the first judicial district, shall receive the sum of twelve hundred dollars, annually, from the first day of January, eighteen hundred and seventy-two, in lieu of, and in full of all expenses now allowed by law. This subdivision shall not increase the pay of any judge except the justices of the Supreme Court."

It is insisted by the relator that this provision manifestly intended this $1,200 as compensation to the judges, absolutely, as increased pay; and this contention is based mainly upon the language of the concluding sentence of the section ; and that as the pay of any judge, except the justices of the Supreme Court, are not increased by this provision, the inference is that the pay of judges, excepted from the prohibition, is increased, and that the word "pay," as used in this act, is synonymous with "compensation," as used in the constitutional provision above quoted. But for the preceding part of this amendment this contention would seem sound, and the deduction made by the relator from the same would be quite controlling. But this provision, like the other to which we have referred, must be construed as a whole ; and in construing it the court may look out of the act itself to other statutes " *in pari materia*." (*Turnpike Co.* v. *People*, 9 Barb., 161; *U. S.* v. *Collier*, 3 Blatchf., 325.) And while it is true that the legislature is not vested with judicial func-

tions which will enable it to put judicial construction upon statutes, the subsequent acts of the legislature upon the same subject sometimes afford complete demonstration of the legislative sense of its own language, and affords a safe guide for the court in expounding a statute. (*Alexander* v. *Mayor, etc.*, 5 Cranch, 1.) "In interpreting the law judges are to explore the intentions of the legislature, yet the construction to be put upon a statute must be such as is warranted by, or at least not repugnant to, the words of the act." (*McClusky* v. *Cromwell*, 11 N. Y., 604.) "It is equally well settled that words, absolute of themselves, and language the most broad and comprehensive, may be qualified and restricted by reference to other parts of the same statute in which they are used, and to the circumstances and facts existing at the time to which they relate or are applied." (*Smith* v. *The People*, 47 N. Y., 337.) In this case the court also used this language: "In case of doubt or uncertainty, acts *in pari materia*, passed before or after, and, whether repealed or unrepealed, may be referred to in order to discover the intent of the legislature, in the use of particular terms."

As we have seen, the object of the provision of section 9 of chapter 408 of the Laws of 1870, in allowing a *per diem* of five dollars to judges while officially engaged away from their homes, was to pay or provide for their expenses, and was in addition to their salary or compensation for services as judges. Chapter 541 of the Laws of 1872, provides a gross sum of $1,200 to be paid the judges annually in lieu of and in full for all expenses now allowed by law, in other words, in lieu of and in full for the expenses of five dollars per day while engaged in holding General Term, Special Term, Circuit, Oyer and Terminer, or attending conventions. By section 13 of article 6 of the Constitution, the relator is relieved and prevented from performing any of the above enumerated duties, and cannot, therefore, incur any of the contemplated expenses. As these expenses are nowhere in the statute, in express terms, denominated a part of the compensation or salary for services, I am inclined to the opinion that they were not intended by the legislature, and are not within the statute a part of the compensation of the judges, and do not, therefore, come within the prohibition of that constitutional provision.

This view seems to be strengthened by chapter 643, Laws of 1873, and

chapter 373, Laws of 1875, in both of which acts, in making appropriation for judicial expenses of the State, the legislature use the terms " salaries and expenses," thereby seeming to keep up the distinction after the enactment of chapter 541 of the Laws of 1872 ; and again, in chapter 270 of the Laws of 1888, the legislature appropriate a compensation of justices of the Supreme Court, whose terms of office are abridged under the provisions of section 13, article 6 of the Constitution, who shall have served as such justices ten (10) years, $12,000. It appearing from the affidavit of the defendant that but two (2) such cases exist in the State, the legislature provided for them compensation at the rate of $6,000 each a year.

I am, therefore, of the opinion that the relator is entitled to receive of the State, as compensation, but $6,000 per year from and after the date of the abridgement of his term of service as justice of the Supreme Court, and that his application for a peremptory *mandamus* must be denied, with costs.

The decision at Special Term was affirmed *pro forma* by the General Term.

Present — LANDON and EDWARDS, JJ.

*Matthew Hale,* for the relator.

*Z. S. Westbrook,* for the defendant.

Order affirmed, with costs.