The People, *ex relatione* Doughty, *vs.* The Judges of
Dutchess C. P.

A *mandamus* will not lie to a subordinate court for the correction of *judicial errors;*
all this court can do in the exercise of its supervisory power is to require inferior
tribunals *to proceed to judgment,* but cannot dictate the judgment to be rendered ;
much less can such tribunals be required to retrace their steps and reverse a deci-
sion already made. So held in a case where a court of C. P. had manifestly
erred in quashing an appeal.

In respect to *ministerial officers* and *corporations* it is otherwise ; they may be re-
quired by *mandamus* to act in a particular manner, and even to reveise what they
have already done.

Mandamus.    By the return to the alternative writ, it appeared
that *James Griffin* recovered a judgment against the relator be-
fore a justice of the peace, on the *twelfth* day of March, 1839,
from which the relator had attempted an appeal to the C. P.
When the cause came on for trial in the C. P., Griffin objected
that the court had no jurisdiction, and on referring to the affida-
vit and appeal bond it appeared those papers recited a judgment
as rendered by the justice on the *eleventh* day of March, 1839,
whereas the return of the justice was of a judgment rendered on
the *twelfth* day of that month.    In all other respects the affidavit
and bond described the judgment accurately, and were in due
form.    The relator thereupon offered to prove that only one
cause had been tried before the justice between the parties, and
also offered to amend the bond.    But the court refused to allow
the amendment, " for the reason that the bond was neither infor-
mal nor imperfect, but was a bond to remove a different judgment
from the one returned by the justice, and also for the reason that
the affidavit upon which the appeal was allowed also mentioned
a judgment different from the judgment returned by the justice,
and which affidavit the C. P. could not amend."    Whereupon
the court refused to proceed to the trial of the cause, and although
no notice had been given by Griffin of a motion for that purpose,
quashed the appeal.    The alternative writ required the judges of

the C. P. to vacate the rule quashing the appeal, and to deny the motion made by Griffin to quash the appeal, or show cause, &c.

*C. W. Swift,* for the relator, now moved for a peremptory mandamus.

*S. Barculo* opposed the motion.

*By the Court,* BRONSON, J. Although the bond was perfect in point of form, there was a variance of a day in reciting the judgment. The recital of the day on which the judgment was rendered was wholly unnecessary, 2 *R. S.* 259, § 189, and the variance was, I think, such an "imperfection" as the court might, in its discretion, have allowed to be amended. § 204. There is also another statute fully warranting the amendment, 2 *R. S.* 556, § 33, 34, and the court of common pleas erred in ordering the appeal to be quashed.

This presents an important question in relation to the appropriate office of the writ of mandamus. The court of common pleas, acting within the scope of its jurisdiction, has heard and decided a matter properly brought before it for adjudication, and the question is, whether we can, by mandamus, require that court to undo what it has done, on the ground that the decision was erroneous. I am of opinion that we possess no such power. I shall not stop to enquire whether the order quashing the appeal was such a final judgment upon the rights of the parties as may be reviewed by writ of error, nor whether the relator has any other remedy. *Commonwealth* v. *The Judges of the C. P.* 3 *Bin.* 273. I place my opinion upon the broad ground that the writ of mandamus cannot be awarded for the correction of judicial errors. This court, in the exercise of its supervisory power over inferior tribunals, can require them, by mandamus, to proceed to judgment, but we cannot dictate what particular judgment they shall render; much less can we require them to retrace their steps, and reverse a decision already made. Although ministerial officers and corporations may be required by this writ to act in a particular manner, or even to reverse what they have

already done, the rule is otherwise in relation to courts of justice, and other bodies acting judicially, upon matters within their cognizance. Their errors, if corrected at all, must be reached by some other process than the writ of mandamus.

It is not to be denied that there had been a gradual departure in this state from the old law on this subject, until this court had, in one instance at least, exercised a jurisdiction by mandamus as large as that which we now decline. But we stand corrected by the decision of the court of last resort in the case of *The Judges of Oneida* v. *The People*, 18 *Wendell*, 79. As we understand that decision, taken in connection with the resolution adopted by the court, we have no jurisdiction by mandamus to review the decision of a subordinate court in a matter of which it had judicial cognizance.

Of this doctrine we do not complain. On the contrary, I will mention by way of confirmation a few authorities in addition to those cited by Mr. Senator *Tracy* in his opinion. In *Chase* v. *The Blackstone Canal Co.*, 10 *Pick.* 244, the court refused to issue a mandamus to an inferior tribunal which *had acted* in a judicial capacity upon a question properly before it. They said, the writ lies either to compel the performance of *ministerial* acts, or is addressed to subordinate *judicial* tribunals, requiring them to *exercise* their functions and render *some* judgment in cases before them, when otherwise there would be a failure of justice from a *delay or refusal to act*. But when the act to be done is *judicial* or discretionary, this court will not direct *what decision* shall be made. And they referred with approbation to the case of *The U. S.* v. *Lawrence*, 3 *Dall.* 42, where it was held by the supreme court of the U. S. that they could not interpose by mandamus to compel a district judge to decide according to the dictates of any judgment but his own. In the case of *Strong, petitioner, &c.*, 20 *Pick.* 484, *Morton, J.* said, this high judicial writ not only lies to ministerial, but to judicial officers. In the former case, it contains a mandate to do *a specific act*, but in the latter, only *to adjudicate—to exercise a discretion* upon a particular subject. In *Ex parte Hoyt*, 13 *Peters*, 279, the district court

had made an order in relation to the custody of certain goods which had been seized by the collector, and the supreme court refused a mandamus to compel the district court to vacate its order. Mr. Justice Story, who delivered the opinion, said, the application was not warranted by the principles and usages of law—that it was neither more nor less than an application for an order to reverse the solemn judgment of the district judge in a matter clearly within the jurisdiction of the court, and to substitute another order in its stead. He added, it has been repeatedly declared by this court that it will not, by mandamus, direct a judge *what* judgment to enter in a suit, but will only require him to *proceed* to render judgment. The same learned court made a similar decision in *Ex parte Whitney*, 13 *Peters*, 404. They said, a writ of mandamus is not the appropriate remedy for any orders, which may be made in a cause by a judge in the exercise of his authority, although they may seem to bear harshly or oppressively upon the party.

The case of *The King* v. *The Justices of Monmouthshire*, 7 *Dowl. & Ryl.* 334, is much like the one at bar. The court of sessions had quashed an appeal, and a motion for a mandamus was denied by the king's bench. *Abbott*, C. J. said, " where the sessions *forbear to give any judgment at all*, this court will interpose to compel them to *go on* and pronounce judgment ; but where they have *actually given judgment*, even under a mistake of law, this court has never yet interposed to disturb their decision." He added, " if we were to grant this application, we should be opening a door to continued litigation and enormous expense, in every case where the propriety of the decision of the sessions might be questioned, either on the ground of mistake in law or fact. There seems to be no authority for such a proceeding, and as our predecessors have not recognized its propriety, we are certainly not disposed to take a step which is so pregnant with mischievous consequences." And *Bayley*, J. said, " the sessions having decided the case, and quashed the order, we are not at liberty to consider whether they have done right or wrong." In *Rex.* v. *Justices of Wilts*, 2 *Chitty's R.* 257,

there was a motion for a mandamus to dismiss an appeal, on the ground that the sessions had decided wrongly ; but the application was refused ; and when the court was pressed with the argument that the party had no other remedy, it was answered by *Bayley*, J., that "there are many cases in which there is no other remedy against the sessions, where we should not interfere." *The King* v. *The Justices of Cambridgeshire*, 1 *D. & R.* 325, proceeded on the same principle. In *Squier* v. *Gale*, 1 *Halst.* 156, the supreme court of N. J. held, that a mandamus would lie to an inferior court to command them to proceed to *judgment*, but not to command them to proceed to *any particular* judgment. *Roberts* v. *Holsworth*, 5 *Halst.* 57 ; *Hawkins* v. *Bennett*, 7 *Halst.* 179, and *The County Court of Warren* v. *Daniel*, 2 *Bibb.* (*Ky.*) 573, are to the same effect.

Many other cases might be mentioned in support of this doctrine, but with the addition of those referred to by Mr. Senator Tracy, enough have already been cited, to show, that neither the king's bench in England, nor those courts in this country, which exercise a like supervisory jurisdiction over subordinate tribunals, would feel themselves authorized to award a mandamus to compel an inferior court to render any particular judgment, or to reverse a decision or order already made in a case properly before it. If this court has occasionally made a more liberal use of the writ of mandamus, it has generally been in cases where the power to proceed in that form has not been questioned, or where the objection has not been much relied on by counsel ; and it has probably happened to all courts, that, with their attention principally directed to the question of right between the parties, they have sometimes failed to give sufficient consideration to the form of the proposed remedy.

In general, a mandamus will not be awarded where the party has another legal remedy ; but the converse of the proposition does not hold true. There are many cases where, although the party has no other remedy, a mandamus will not lie. Motions for new trials on the weight of evidence, on the ground of surprise, or to let in newly discovered evidence, and applications

The People *v.* Superior Court of New-York.

for amendments, for relief against defaults, and the like, are among the number. Such questions are addressed to the sound discretion of the court of original jurisdiction, and their decision is final. However desirable it may seem in a particular case to reach the decision upon such a matter, I am well satisfied that the advantages which would probably result from the review, whether by mandamus or otherwise, would be greatly outweighed by the mischiefs which would be likely to follow. There are few decisions which conclude the party as to his legal rights, which cannot be reached by writ of error. If we had the power to go beyond cases of that kind, and should undertake to re-examine matters of practice and questions of discretion, it would be necessary to multiply appellate courts to an indefinite extent— legal controversies would be interminable, and the parties would be overwhelmed with costs and expenses.

But it is enough that this court does not possess the power to review judicial errors of any kind by mandamus. We are all of opinion that the motion for a peremptory writ must be denied.

Motion denied.