# Ex Parte THE CITY COUNCIL OF MONTGOMERY.

1. The Supreme Court will not interfere, by *mandamus*, or otherwise, to compel the dissolution of an injunction on the filing of an answer.

THE City Council of Montgomery, by its attorney, Thomas J. Judge, made application to the Supreme Court, by petition, for a *mandamus* against the Hon. Joseph W. Lesesne, Chancellor of the Southern Division of the State of Alabama, requiring him to dissolve an injunction which had been granted in a certain cause pending in the Chancery Court of Montgomery, wherein Marion A. Baldwin, Attorney General of the State, on the relation of George Montague and others, was complainant, and the petitioner was defendant. The petition alleges, that said bill or information was filed, to prevent a contemplated extension of the city grave-yard ; that the defendant had filed its answer to said bill, fully denying all the grounds of equity therein alleged, and then moved to dissolve the injunction ; which motion the court discharged, with costs ; that the petitioner has no right of appeal from said decision, and that the necessity for the dissolution of said injunction is urgent.

THOS. J. JUDGE, for the petitioner :

The only matters of equity alleged in the bill, are : 1st, that the petitioner proposed and intended to close up and obstruct Jefferson and Columbus streets, and also a public road, called the "Julkins Ferry Road" ; which allegations are met in the answer, and fully denied ; and, 2nd, "that the health, comfort, convenience and enjoyment of the citizens of Montgomery will be materially impaired," by the proposed extension of the grave-yard ; that the same "will be highly obnoxious and offensive to the senses of the citizens" ; that the value of a great portion of the real property of the city will be injured thereby"; and that such extension "will be both a public and private nuisance, and productive of irreparable injury." These are mere general conclusions, not specifying any facts from which

they could legitimately result, and cannot give equity to the information or bill. If, however, they constitute equity, they are fully met and answered.

The following authorities are referred to: 2 Story's Equity § 924 a ; 10 Ala. 63 ; Roper v. Randolph, 7 Porter 238; The State v. The Mayor &c. of Mobile, 5 *ib.* 279 ; Earl of Ripon v. Hobart, 3 Mylne & K. 169 ; Jerome v. Ross, 7 Johns. Ch. R. 314. Erecting "disagreeable objects" no nuisance.— Drewry on Injunctions, mar. p. 240, 11 Law Library 165.— The case in 8 Iredell's Equity R. 9, referred to in the decretal order of the chancellor, is wholly unlike the present, and is not an authority to sustain his position.

CHILTON, C. J.—The Supreme Court of this State has a general superintendence and control over inferior tribunals, as prescribed by the constitution of the State.—Art. 5 § 2. This control and superintendence must not, however, be exercised capriciously or arbitrarily, but according to the established forms and usages which obtain in the administration of justice.

Should this court interpose its jurisdiction to control the inferior courts in the exercise of their discretion, either in the making and continuing of interlocutory orders, or in refusing to make them, in the progress of causes, it would be difficult to calculate the delay, embarrassment and inconvenience which would result, not only to suitors, but to the courts themselves.

If every order of continuance, every refusal to grant new trials, and the numerous interlocutory orders which are made in causes, both at law and in equity, from their inception to their final termination, could each be made distinct subject-matter for an appeal to this court, at the hazard of a heavy bill of costs, this court would become an intolerable grievance, and there would be no end to the litigation to which a cause requiring a great number of such orders might be subjected.

The granting or continuing of injunctions by the courts of equity, is a matter within the sound discretion of those courts, to be exercised with reference to the peculiar circumstances of each case. Especially is this so with respect to their jurisdiction over the subject of nuisances. Aside from the statute which allowed an appeal, in cases where the chancery court dissolved an injunction, to the next term of this court, no such

appeal would lie ; and this court has uniformly refused to interfere with the exercise of the discretion vested in the primary courts, in the making of interlocutory orders, the granting or refusal of new trials, and the like.

In the case before us, we are asked to control the Chancellor, in requiring him to dissolve an injunction, which, in his opinion, under all the circumstances of the case, ought not to be dissolved. Without intimating any opinion as to the correctness of his conclusion, considered in connection with the facts, we are satisfied that the case made by the petitioner presents no ground for our interference. *Mandamus* lies to compel the inferior courts to exercise a discretion, but not to control that discretion.

It was suggested by the counsel for the petitioner, that, under the decision made by a majority of this court in *Ex parte* Morgan Smith, at the last term, a prohibition would lie. The two cases are not analogous. In that, it was insisted the Chancellor had exceeded his jurisdiction ; in this, no question as to jurisdiction is raised, but merely that the court has committed an error in refusing to dissolve. It is too well settled to require the citation of authority, that for mere errors of judgment, in respect of matters confessedly within the jurisdiction of the court, no prohibition lies.

Let the motion be denied, at the cost of the petitioner.