## No. 7841.

STATE EX REL. H. O. AMES, EXECUTOR, VS. JUDGE SECOND DISTRICT COURT, ETC.

The decree of the probate court overruling an exception filed by an executor to the opposition to his tableau made by the forced heirs, whose *legitimes* as alleged, were not impaired by the legacies and charges on the tableau, is an interlocutory decree which works no irreparable injury to the executor, and from which, therefore, he is not entitled to a separate appeal.

APPLICATION for a mandamus.

---

D. C. & L. L. Labatt for relators :

First—Relators contend that the judgment causes them irreparable injury, because it opens the judgment previously homologated, so as to let in the opposition of other parties concluded by the judgment, who at no time were before the court opposing, and that the decision disturbs the *res adjudicata* character of that judgment, and is tantamount to rescinding and annulling the same in an anomalous and irregular way. If such a practice is sanctioned, there is no virtue whatever in the theory that a judgment of homologation establishes any thing or ends litigation.

Second—The prayer for general relief cannot be interpreted to let in other interests, or the same persons claiming rights at law under different titles, so as to open an homologated account.  11 A. 69 ; 15 A. 426 ; 7 La. 51, 152 ; 21 A. 303.

Third—There can be no doubt that as forced heirs these plaintiffs were without interest to attack the administration of the disposable portion.  The mother could have thrown it in the river had she chosen.  R. C. C. 1493, 1673 ; 8th A. 121 ; Adams 12 A. 759 ; Suc. Macius, 31 A. 130 ; 13 A. 424, Clarkson ; Art. 1634 (1627) C. C.

"One who claims under a will must concede it as an entire instrument ; he cannot claim under one portion and repudiate or impeach another portion."  State vs. Joyce, 48 Ind. 310.

Under this authority no opposition could be entertained by the plaintiffs as " transferees of the residuary legatees," to dispute the will under which they claim the legacy to Mr. Ames.

There is another error in the reason, viz.: "Opponents being heirs, besides transferees of the universal legatees, are only *prima facie* bound by the items of the accounts."

No brief on behalf of respondent was sent to the Reporter.

The opinion of the court was delivered by

DeBlanc, J. In this case, what are the facts? The executor of the will of Mrs. Ames filed his third provisional account, and several of the children of the deceased, have—as her forced heirs—opposed the homologation of exclusively the account thus filed, on the ground that, it is partly incorrect.

The executor excepted to their opposition, and—in his exception— alleges, in substance, that there is—in their mother's succession—ample property to satisfy their *légitime*, and that—as forced heirs—their only right can be exercised but in a direct action, when the legacies and charges exceed the disposable portion.

The children's opposition was filed on the 14th July 1879, and—so far as it was not opposed—the executor's account was homologated on the 22d of that month. In the ensuing November, said opposition was excepted to, and—in February 1880—the exception was over-ruled. Considering that the decision overruling his exception would cause him an irreparable injury, the executor attempted to appeal there-from, but the judge being of the opinion that—from such a decision—no separate appeal could be taken, refused to grant it ; and—on due appli-cation—was directed, by this court, to show cause why he should not be ordered to comply with the executor's request, and grant him an appeal.

In his answer, the judge contends that the interlocutory decision which he has rendered, cannot work irreparable injury, inasmuch as it remains subject to review in this court, by appeal from such final judg-ment as may hereafter be rendered in the cause, which is still pending before him.

His Honor admits that the forced heirs cannot—as such—dispute the correctness of the executor's tableau, but he urges that—though they have opposed said tableau in no other capacity than that of forced heirs—they can, under their prayer for general relief, show that they are the transferees of the universal legatees, and—by virtue of the transfer which they hold from the latter—contest each and every item of

the executor's account, whether those items be or not specifically op-
posed by them.

How—we are asked—can the prayer for general relief be used to
let in a case other parties than those therein named, or the same
parties, in capacities not disclosed by the pleadings, and more par-
ticularly in this instance, when—as to opponents, whether they be con-
sidered as forced heirs or the legatees' transferees, the decree of
homologation is *res adjudicata?*

Was the judge's refusal to grant an appeal from the decision over-
ruling the executor's exception, a refusal—on his part—to perform a
plain and unqualified duty, one as to which he is vested with no
discretion?

The exception was that, as forced heirs, those who oppose the
tableau have no interest beyond this *légitime*, and that—inasmuch as
their *légitime* is in no way affected by said tableau, they have no right
to contest it. The decision complained of holds that, as transferees of
the universal legatees and under their prayer for general relief, those
heirs can oppose each and every item of the executor's account;
and—whether right or wrong—that decision did involve the exercise of
that official discretion, which cannot be controlled by mandamus.

Definitive or final judgments are those which decide *all the points*
in controversy between the parties, and—as to them—have the force of
*res adjudicata.* The decision complained of is not of that class, and—
evidently—is but an interlocutory decision.

C. P. 539.

Can it cause, to those against whom it is rendered, an irreparable
injury?

"The issue presented by the forced heirs, is—we are told—forever
settled by the reasons of the court, and there can never be a judgment
in their favor, as the authorities cited by the court show; but if a
decision be rendered in favor of new parties, on a different title, upon
the same petition, we can never get the error corrected, because we
acquiesced in the decision, which improperly inserted them into the
petition of the forced heirs as joint plaintiffs, and it will be too late to
say our exception extended to them, as transferees, when it only ap-
plied to them as forced heirs."

In this regard, the counsel's apprehension is not founded—for, their
overruled exception still stands as a protest against the interlocutory
decision of the court, and—besides—they can, by proper and timely ob-
jection to any evidence which may not be legally admissible under the
pleadings, repel any presumption of acquiescence in the decision referred
to.

This court has often held that an appeal lies but from final judg-

ments, or from those which—though interlocutory—may cause an irreparable injury, and that an appeal does not lie from judgments refusing to sustain exceptions of *lis pendens* and the jurisdiction, or to the right of one to sue a partner without suing all the partners, and the like. Otherwise, every case might ascend, by fractions, from the original to the appellate jurisdiction, and—in the latter—many a fractional decision might precede that by which the last branch of a decree would be finally affirmed, amended or reversed.

4 N. S. 366 ; 7 N. S. 102, 204 ; 2 A. 964 ; 3 A. 218 ; 14 A. 388 ; 15 A. 160 ; 25 A. 381 ; 26 A. 121 ; 30 A. 382.

In "*Ex parte* City Council of Montgomery," the court said : "If every order of continuance, every refusal to grant new trials, and the numerous interlocutory orders which are made in causes, both at law and in equity, from their inception to that final termination, could each be made distinct subject matter for an appeal to this tribunal,     *     * it would become an intolerable grievance, and there would be no end to the litigation to which a cause requiring a great number of such orders might be subjected."

24 Ala. 98.

" I place my opinion "—said Mr. Justice Bronson—" upon the broad ground that the writ of mandamus cannot be awarded for the correction of judicial errors. This court, in the exercise of its supervisory power over inferior tribunals, can require them, by mandamus, to proceed to judgment, but they cannot dictate what particular judgment they shall render ; much less can we require them to retrace their steps, and reverse a decision already made."

20 Wend. 658.

In "Bank of Columbia vs. Sweeny," Chief-Justice Marshall said, as the organ of the court ;  " This case might still be brought before us by a writ of error, notwithstanding any opinion expressed upon the mandamus, and the same question again be discussed upon the final judgment. The effect, therefore, of this mode of interposition, would be to retard decisions upon questions which were not final in the court below, so that the same cause might come before this court many times, before there would be a final judgment."

1 Pet. 567.

If—hereafter—the relators have reasons to complain of the final decree which—as yet—has not been rendered, their appropriate remedy shall be by an appeal from that decree, and—then—the forced heirs might themselves contend that—as the disposable *quantum* and the *légitime* are measured, not to the entire estate, without regard to the debts and charges which may exist against it, but to a balance fixed by the Code, after deducting the sums due by the estate, they have the

State ex rel. Ames, Executor, vs. Judge Second District Court.

right to oppose—as forced heirs—an account which, in their opinion, tends to reduce said balance and their *légitime*.

Be this as it may, the relator's application for a mandamus is not sustained by either the facts, the law, or the 90th article of the constitution of 1879.

It is, therefore, ordered, adjudged and decreed that the provisional writ issued in this case, on the 15th March, 1880, is discharged at relator's costs.