THE PEOPLE OF THE STATE OF NEW YORK ex rel. PETER HARRIS, Respondent, *v.* THE COMMISSIONERS OF THE LAND OFFICE, Appellants.

1. PUBLIC OFFICERS — MINISTERIAL AND JUDICIAL DUTIES — MANDAMUS. When the law requires a public officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act and with no power to exercise discretion, the duty is ministerial in character, and performance may be compelled by mandamus, if there is no other remedy; when, however, the law requires a judicial determination to be made, such as the decision of a question of fact or the exercise of judgment in deciding whether the act should be done or not, the duty is regarded as judicial and mandamus will not lie to compel performance.

2. COMMISSIONERS OF THE LAND OFFICE — JUDICIAL DUTIES — MANDAMUS. The duties of the commissioners of the land office, in determining the questions whether the title of the People has failed, and a claim for legal compensation exists, and the claim is presented by the person entitled thereto, as prerequisites to its becoming their duty, under the statute (1 R. S. 198, § 6), to direct the refund by the state of the original purchase moneys received for land granted by it, are judicial in character and performance thereof in a particular manner cannot be enforced by mandamus.

*People ex rel. Harris* v. *Comrs. Land Office*, 90 Hun, 525, reversed.

(Argued March 2, 1896; decided April 7, 1896.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made December 3, 1895, which affirmed an order of Special Term, directing that a peremptory writ of mandamus be issued against the defendants, the commissioners of the land office.

On the first of February, 1882, the state engineer and surveyor, by direction of the commissioners of the land office,

sold to one Jere W. Finch certain timber land in the county
of Hamilton, and issued to him a certificate stating that he
had on that day purchased all the interest of the People of
the state of New York in the lands aforesaid for the sum of
$6,300, "paid in full." The title of the state depended on
certain tax sales, for the non-payment of taxes, made in 1871,
1877 and 1881, when the lands were bid in for the state. As
they were not redeemed from the sales of 1871 and 1877, the
comptroller conveyed them to the state in the usual way and
as provided by law. At the time of said sale by the land
commissioners the state still held the comptroller's certificate
for the sale of 1881, but that was transferred to Mr. Finch as
a part of the transaction. On the 15th of December, 1884,
Finch transferred his interests to the relator, who never
received nor applied for any patent from the state. Through
the lapse of time and the action of chapter 448 of the Laws of
1885, the title of the People and their assigns had apparently
become perfect prior to December 31st, 1891, yet on that day
the comptroller, upon the application of the relator, ordered
a cancellation of the tax sales made in 1871, 1877 and
1881, and on March 29, 1892, the order was formally
carried into effect. On the 27th of June following the
relator applied to the commissioners of the land office
"for the refunding, due by reason of the failure of the
state's title to" the lands in question, of said sum of
$6,300, with interest thereon at the rate of six per cent
from February 1st, 1882. In the meantime the lands, which
were "valuable and wooded" in 1882, had been lumbered,
but to what extent does not appear, although Mr. Finch
stated in an affidavit made by him in November, 1892, and
used before the land board, that "the said lands are now
worth nearly as much or more in actual worth and value
than they were when he purchased the same in 1882, and
it is not true that he ever realized from said lands since
his said purchase all the value of which they are capable
of producing." The land commissioners held the application
under advisement for more than two years before they finally

28    People ex rel. Harris *v.* Commissioners. [April,

Points of counsel.    [Vol. 149.

passed upon it, and in the meanwhile took the opinion of two successive attorneys general upon the subject. Both of those officers advised against the payment of the claim upon the ground, among others, " that the purchaser has realized from these lands all of the value of which, in their nature, they are capable of producing and now, in addition, seeks to recover his purchase money, with interest at six per cent, for ten years."

The relator appeared before the land commissioners by counsel, presented affidavits and was heard at length, but on the 27th of December, 1894, they denied his application. On the 30th of March, 1895, he procured, upon notice, an order from the Special Term directing that a peremptory writ of mandamus be issued commanding the commissioners of the land office and the state officers composing the same, " forth-with to direct and require by proper order and direction the payment to the said relator and applicant, Peter Harris, out of the treasury of this state * * * the sum of $6,055.63 and interest thereon from February 2, 1882, at the rate of six per cent per annum."

Upon appeal to the General Term said order was affirmed, and from the order of affirmance this appeal is brought.

*T. E. Hancock, Attorney-General,* for appellants. The title of the People of the state to the lands conveyed to Finch has not failed, and Harris is not entitled to the payment of any money from the treasury of the state. (1 R. S. 198, § 6; Laws of 1855, chap. 427, § 85; Laws of 1885, chap. 448; *People* v. *Turner,* 117 N. Y. 227 ; *Ensign* v. *Barse,* 107 N. Y. 332; *People* v. *Hagadorn,* 104 N. Y. 516; Cooley on Const. Lim. [6th ed.] 470; *C. C. Bank* v. *Judson,* 8 N. Y. 259 ; *Ferguson* v. *Crawford,* 70 N. Y. 256 ; *Dobson* v. *Pearce,* 12 N. Y. 156; *Clearwater* v. *Brill,* 63 N. Y. 627; *Broad-head* v. *McConnell,* 3 Barb. 183.) The board acted judicially in determining to refuse refunding, and mandamus will not lie. (*People ex rel.* v. *Common Council,* 78 N. Y. 39; *Howland* v. *Eldredge,* 43 N. Y. 457; *People ex rel.* v. *Brennan,* 39 Barb. 651; *People ex rel.* v. *Leonard,* 74 N.

1896.]   People ex rel. Harris *v.* Commissioners.   29

N. Y. Rep.]                 Points of counsel.

Y. 443; *People ex rel.* v. *Hayt,* 66 N. Y. 606; *People ex rel.* v. *Bd. Commissioners, etc.,* 99 N. Y. 648; *People ex rel.* v. *Jones,* 110 N. Y. 509; *People ex rel.* v. *Commissioners,* 135 N. Y. 447; *People ex rel.* v. *Chapin,* 104 N. Y. 96; *People ex rel.* v. *McCarthy,* 102 N. Y. 630.) The alleged claim of Peter Harris was barred by lapse of time and the Statute of Limitations can properly be invoked in this case. (Const. N. Y. art. 7, § 14.)

*Z. S. Westbrook* for respondent. The applicant is entitled to the refunding as a matter of right. (Laws of 1885, chap. 448; Laws of 1855, chap. 427; *People* v. *Turner,* 117 N. Y. 239; *People* v. *Hagadorn,* 104 N. Y. 516; *People ex rel.* v. *Chapin,* 109 N. Y. 177; 105 N. Y. 309.) The applicant as assignee is entitled to the money due on failure of title in such cases. (*People ex rel.* v. *Chapin,* 109 N. Y. 177; 105 N. Y. 309; Code Civ. Pro. §§ 449, 1909, 1910; 1 Wait's Law & Pr. [5th ed.] 812–819; *Bolen* v. *Crosby,* 49 N. Y. 183; *Morris* v. *McCulloch,* 83 Penn. St. 34.) It is no legal objection to the application that no patent or deed in form was ever granted for the land. (Laws of 1885, chap. 283, § 7; Laws of 1887, chap. 475; Laws of 1893, chap. 332, §§ 100, 120; Const. N. Y. art. 7, § 7.) The applicant, as the assignee of Finch, who was grantee of the state, stands in the position of the state as the purchaser at the tax sales. (*People ex rel.* v. *Chapin,* 104 N. Y. 369; *People ex rel.* v. *Wemple,* 139 N. Y. 240; *People ex rel.* v. *Chapin,* 105 N. Y. 309; 109 N. Y. 177.) Mandamus is a proper remedy, and the peremptory writ was properly ordered. (Code Civ. Pro. § 2070; *People ex rel.* v. *Supervisors of Otsego Co.,* 51 N. Y. 401; *People ex rel.* v. *Supervisors,* 70 N. Y. 228, 235; *Hayes* v. *C. G. Co.,* 143 N. Y. 641, 642; *People ex rel.* v. *Board of Police,* 75 N. Y. 38; *Hull* v. *Supervisors Oneida Co.,* 19 Johns. 259; *People ex rel.* v. *Common Council,* 78 N. Y. 56–61; *In re Freel,* 148 N. Y. 170, 171; *People ex rel.* v. *Rice,* 138 N. Y. 151; *People ex rel.* v. *Rosendale,* 76 Hun, 112; *People ex rel.* v. *Preston,* 140 N. Y. 549.)

VANN, J.   The claim of the relator to restitution is based upon that article of the Revised Statutes which relates to "the general powers and duties of the Commissioners of the Land Office," and particularly on section six thereof, which is as follows, viz. : " Whenever the title of the people of this state to lands granted under its authority shall fail, and a legal claim for compensation on account of such failure shall be preferred by any person entitled thereto, it shall be the duty of the commissioners to direct the payment of the original purchase-moneys which have been paid to the state by such person, with interest, at the rate of six per cent from the time of such payment, to be paid out of the treasury on the warrant of the comptroller." (1 R. S. 198 [1st ed.] § 6.)

The appellants claim that the land commissioners acted judicially in refusing to refund, and that hence, the relator has mistaken his remedy in proceeding by mandamus instead of by *certiorari.*

The primary object of the writ of mandamus is to compel action.   It neither creates, nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency.   While it may require the performance of a purely ministerial duty in a particular manner, its command is never given to compel the discharge of a duty involving the exercise of judgment or discretion, in any specified way, for that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued.   In such cases its sole function is to set in motion, without directing the manner of performance. (*People ex rel. Myers* v. *Barnes*, 114 N. Y. 317; *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96; *People ex rel. Equitable Life Assur. Society* v. *Chapin*, 103 N. Y. 635; *People ex rel. Hammond* v. *Leonard*, 74 N. Y. 443; *People ex rel. Demarest* v. *Fairchild*, 67 N. Y. 334; *People ex rel. Howland* v. *Eldredge*, 43 N. Y. 461; *People ex rel. Doughty* v. *The Judges, etc.*, 20 Wend. 658.) As was said by this court in *People ex rel. Francis* v.

*Common Council of Troy* (78 N. Y. 33, 39), "A subordinate body can be directed to act, but not how to act, in a matter as to which it has the right to exercise its judgment. The character of the duty and not that of the body or officer, determines how far performance of the duty may be enforced by mandamus. Where a subordinate body is vested with power to determine a question of fact, the duty is judicial, and though it can be compelled by mandamus to determine the fact, it cannot be directed to decide in a particular way, however clearly it may be made to appear what the decision ought to be." It is a universal rule that in the discharge of all duties involving the exercise of official judgment or discretion, the officer or tribunal must be left free to act, and cannot be controlled in a particular direction. (Merrill on Mandamus, § 33 ; Short on Mandamus, Heard's ed. p. 256 ; High's Extraordinary Legal Remedies, § 24 ; Wood on Mandamus, p. 19 ; 14 Am. & Eng. Encyc. of Law, 110.) When the law requires a public officer to do a specified act, in a specified way, upon a conceded state of facts, without regard to his own judgment as to the propriety of the act and with no power to exercise discretion, the duty is ministerial in character and performance may be compelled by mandamus, if there is no other remedy. When, however, the law requires a judicial determination to be made, such as the decision of a question of fact or the exercise of judgment in deciding whether the act should be done or not, the duty is regarded as judicial and mandamus will not lie to compel performance.

There is no claim, in the case under consideration, that the commissioners did not act at all, but complaint is made that their duties were of such a nature as to require them to act in the particular manner desired by the relator. What was the character of their duties under the section already quoted ? An analysis of that section shows that they had three questions to determine : 1. Had the title of the People failed ? 2. Did a legal claim for compensation exist ? 3. Was the claim presented by the person entitled thereto ? How were the com-

missioners to determine these questions? Clearly upon satisfactory evidence tending to establish the facts making it their duty to refund. They were to decide, in the first place, whether the title of the state had failed. While the record of a judgment in ejectment recovered by a third person against the purchaser from the People would ordinarily be conclusive as to the failure of title, it would not necessarily be so, for it might appear that the judgment was recovered through frand and collusion and without notice to the state. In this case the relator relied upon the cancellation of the taxes by the comptroller as in the nature of a judgment, but that act was done at his own request, upon evidence furnished by him, and with no apparant necessity or reason therefor, except to make it the basis of this large claim against the State. In other words, he attacked his own title, and succeeded, as he claims, in persuading a State officer to destroy it. His possession has not been disturbed, so far as appears. No one seems to have questioned his title except himself. He is in no position to recover from a grantor conveying with the usual covenants of warranty. He has lost nothing as yet. For aught that appears he can always remain in the undisturbed enjoyment of the lands. If anyone has ever demanded possession, or made a claim on account of the timber taken from the premises, the record before us does not disclose it. Under these circumstances were the commissioners bound, as a matter of law, to decide each of said questions in favor of the relator? Did the law give them no latitude of action? Were they obliged to believe his affidavits, or to accept the evidence offered by him as conclusive? Had they no power to decide except as he wanted them to decide? Were they not called upon to exercise judgment in passing upon the effect of the evidence? (*People ex rel. Millard* v. *Chapin, supra.*) These questions suggest the nature of their duties, which required the consideration of evidence and an adjudication thereupon. Their decision, refusing restitution to the relator, was a judicial determination, involving the exercise of judgment upon questions of both fact and law.

.Their duties under the section in question were not ministerial, but judicial in character and performance thereof in a particular manner, cannot be enforced by mandamus. Even if their decision was clearly wrong some other remedy must be adopted, for this writ does not lie for the correction of errors

Without considering any of the other questions raised, we think that the orders of the General and Special Terms should be reversed and the proceeding dismissed, with costs in all courts.

All concur.

Orders reversed.