(31 Misc. Rep. 512.)

### In re CITY OF RENSSELAER et al.

(Supreme Court, Special Term, Albany County. March 27, 1900.)

1. MUNICIPAL CORPORATIONS—BOARD OF HEALTH—EXPIRATION OF TERM OF OFFICE—VACANCY—APPOINTMENT BY COUNCIL.

    Charter of Rensselaer (Laws 1898, c. 226, § 17) provides that the commissioners of health shall possess the qualifications, be appointed, and hold office as prescribed by the provisions of existing general laws. Laws 1893, c. 661, § 20, declares that the board of health shall consist of the mayor, and at least six other persons, to be appointed by the common council on the nomination of the mayor. *Held* that, where a vacancy arose from expiration of term of office, an appointment made by council to fill such vacancy was without validity.

2. SAME—NOMINATION BY MAYOR—REJECTION BY COUNCIL—MANDAMUS.

    Where a vacancy on the board of health arose from expiration of term of office, through failure of council to agree on the nominees of the mayor, the mayor not having the sole appointing power, mandamus will not lie to compel council to appoint as commissioners of health the persons nominated by the mayor.

Application by the city of Rensselaer and James I. Miles, mayor, for a writ of mandamus to the common council and aldermen of the city, to compel them to appoint as commissioners of health persons nominated therefor by the mayor. Denied.

.T. Almern Griffin (Thomas ·S. Fagan, of. counsel), for applicant James I. Miles.

Randall J. Le Boeuf, for respondent.

BETTS, J. This is an application by the city of Rensselaer and James I. Miles, the mayor of said city, for a peremptory writ of mandamus directed to the common council of said city and the aldermen thereof, directing them to convene and forthwith appoint his two certain nominees, Michael Vaughn and Eugene Hemstreet, as com-

missioners of health of said city. The facts are briefly these: On January 31, 1900, there were three vacancies in the board of health or health commissioners of the city of Rensselaer. On February 20, 1900, the mayor sent a communication to the common council appointing Dr. W. S. Ackert, Eugene Hemstreet, and Michael Vaughn to fill the vacancies thus existing. It appears by the opposing affidavits on behalf of the common council that this communication of the mayor did not reach them on the day of its date, which was one of the regular meeting days of the common council; at least, it was not submitted to or acted upon by them on that day. On March 6th, at a regular meeting of the common council, the communication was laid upon the table. On March 13th, at a special meeting of the common council, no action was taken on these nominations. On March 20th the common council appointed Dr. W. S. Ackert, nominated by the mayor, and by vote, the ayes and noes being called for, rejected the other two appointments. On March 23d, the mayor, upon affidavits setting forth the facts, obtained from Justice Chester an order to show cause, returnable before me at this time, why said peremptory writ of mandamus should not issue. On the same day an application of John J. Burke, a commissioner of health of the city of Rensselaer, was made to County Judge Nason for the appointment of a commissioner of health in place of G. Merrill Haight, whose term had expired. An appointment was that day made by the county judge of one Arthur Lucas to fill the vacancy existing, caused by the expiration of the term of said Haight, which was duly filed in the county clerk's office, and also with the city clerk of the city. The common council also return that on January 16, 1900, they appointed one Robert Dunsheath, to fill the unexpired term caused by the expiration of his term of office. As the view that I take of this application will not again cause me to refer to this action of the common council, it may be proper to state that, upon the papers submitted at this hearing, Robert Dunsheath's alleged appointment by the common council as health commissioner is without any validity.

The contention is made here on behalf of the mayor that he is actually the appointing power; that his nomination has all the force and effect of an appointment; that the common council, in appointing or acting upon his nominations, acts in a ministerial capacity only; and hence, he having made his nominations, the writ of mandamus should issue to compel the common council to make the appointments of the persons nominated by him. The members of the common council contend that they are a part of the appointive power; that discretion is vested in them as to the appointment or confirmation of the persons nominated by the mayor; and that they exercised that discretion by appointing one of his nominees, and rejecting the others; and that, being vested with that discretion, a peremptory writ of mandamus will not lie to compel them to act in a different manner. In view of the opinion I entertain concerning the law in the matter, a decision of this contention will decide this application.

The charter of the city of Rensselaer (section 17, c. 226, Laws 1898, amending section 150, c. 359, Laws 1897), provides that "the commissioners of health shall possess the qualifications, be appointed and

hold office as prescribed by the provisions of existing general laws relating thereto." The "general laws relating thereto" is the public health law of which section 20 provides as follows:

, "In the cities except New York, Brooklyn, Buffalo, Albany and Yonkers, the board shall consist of the mayor of the city, who shall be its president, and, at·least, six other persons, one of whom shall be a competent physician, who shall be appointed by the common council, upon the nomination of the mayor, and shall hold office for three years. * * * If the proper authorities shall not fill any vacancies occurring in any local board within thirty days after the happening of such vacancy, the county judge of the county shall appoint a competent person to fill the vacancy for the unexpired term, which appointment shall be immediately filed in the office of the county clerk, and a duplicate thereof filed with the clerk of the municipality for which said appointment is made." Laws 1893, c. 661.

In view of the contentions of the mayor and the common council as to the respective rights of each, and in order to arrive at the intention of the legislature in passing this section of the public health statute, it may assist us to follow the general course of legislation in regard to the appointment of boards of health in this state.

Chapter 324 of the Laws of 1850 was entitled "An act for the preservation of the public health." Section 1 of that statute is as follows:

"It shall be the duty of the common council of every city, and the trustees of every incorporated village in this state, in which there is not now a board of health duly organized, to appoint once in each year, a board of health for such city ·or village, to consist of not less than three nor more than seven persons, and a competent physician, to be the health officer thereof."

The cities of New York and Brooklyn were excepted from this statute. It will be seen by this statute that the members of the boards of health in cities·were appointed by the common council. In 1881 this statute was amended by chapter 431.

Section 1 of that chapter, so far as is necessary for our purposes, reads as follows:

"It shall be the duty of the common council of every city in this state, except in the cities of Brooklyn, New York, Yonkers and Buffalo (which are hereby excepted from the operations of this act), to appoint a board of health for such city to consist of six persons who are not ·members of said council, and who shall be appointed as follows: Two persons for a term of one year; two persons for a term of two years; and two persons for a term of three years (one of whom, at least, shall be a competent physician). The mayor of such city shall be a member ex officio of such board of health, and shall be president thereof."

It will be seen that the appointment of the members of the board of health was still to be made by the common council, but that the mayor, by virtue of his office, was made a member of the board of health, and president thereof.

In 1885, chapter 270, entitled "An act for the preservation of the public health, and the registration of vital statistics," was passed by the legislature. Section 1 of that act, so far as is essential to the consideration of this case, is as follows:

"It shall be the duty of the common council, upon the nomination of the mayor of every city in this state, except in the cities of New York, Buffalo, Albany and Yonkers and Brooklyn, which are hereby excepted from the operation of this act, to appoint a board of health for such city, to consist of six persons who are not members of said council (one of whom, at least, shall

be a competent physician), who shall be nominated and appointed as follows: Two persons for a term of one year; two persons for a term of two years; and two persons for a term of three years. The mayor of such city shall be a member ex officio of such board of health, and shall be president thereof."

Section 2 provided as follows:

"If in any case a vacancy shall occur in the board of health of any city, village or town, by the death, resignation, inability to act or removal from said said city, village or town of any member thereof, and if the proper authorities, by inability, neglect or refusal, fail to fill such vacancy, it shall be the duty of the county judge of the county in which such city, village or town is situated, upon being satisfied that such vacancy should be filled without delay, to appoint in writing a competent person to fill such vacancy for the unexpired term. The written appointment to a board of health made by a county judge under this section shall forthwith be filed in the office of the clerk of the county in which said board of health is located."

Here for the first time the legislature provided for the appointment of members of boards of health upon the nomination of the mayor. In the same act for the first time appears the provision for the filling of a vacancy by the county judge providing the proper authorities, i. e. the mayor and common council, fail to fill such vacancy. This vacancy must arise "by the death, resignation, inability to act or removal from said city * * * of any member thereof," and the proper authorities, i. e. the mayor and common council, must, by inability, neglect, or refusal, fail to fill such vacancy before the county judge acquires jurisdiction to appoint, and then he must further be satisfied that such vacancy should be filled without delay. The county judge, under this section, had no authority to appoint a member of the board of health to fill the position arising from expiration of term of office, that is, to virtually appoint de novo a member of the board of health through failure of mayor and common council to agree upon a nominee of the mayor. No time is given in which action should be taken by the county judge, but a reasonable time for the said authorities, the mayor and common council, to agree upon members of the board of health to fill the vacancy thus arising would evidently be inferred from the statute.

In 1893 the public health law, being chapter 25 of the General Laws, and also being chapter 661 of the Session Laws of that year, was passed. That provides for practically the same method of appointment by the common council on the nomination of the mayor, and the portion pertinent to this case is hereinbefore quoted as amended in 1897. It thus appears that until 1885 the members of the boards of health of cities, with the exception of a few excepted cities, were appointed by the common council; that then the law was amended by providing that the mayor should nominate, and the common council should appoint.

From this examination of the history of legislation in relation to appointments of boards of health in cities, it seems clear that the legislature still intended by its latest statute to make the selection of the members of the boards of health the joint action of the mayor and the common council; the mayor to nominate, and the common council, in its discretion, to appoint or confirm his nomination. If the common council does not confirm or appoint the men nominated by the

mayor, it would seem to be the mayor's duty, in his discretion, to send in other names, and to continue sending such names until an appointee is named who will be appointed by the common council. If it had been the intention that the mayor's nomination should be final, the confirmation or appointing of the members of the board of health by the common council could very well have been omitted, as is now done in the case of so many city officials, and the mayor made the direct appointive power.

It is a question, under the statute as it now stands, whether a county judge has any authority to make an original appointment to fill a vacancy arising by the expiration of the term of office of a health commissioner or member of a board of health, or whether his power of appointment is not confined solely to power to fill the unexpired term of some person previously appointed by the mayor and common council; and in that connection it might perhaps be a matter of some difficulty, in this case, to determine, in the language of the statute, whose "unexpired term" Arthur Lucas is now filling. However, as, in the view taken of this application, it is not necessary to pass upon this question, I do not undertake to do so.

Since I have determined that the common council is vested with discretion in the matter of appointing the nominees of the mayor, the application for a writ of mandamus must be denied. "The primary object of the writ of mandamus is to compel action. It neither creates nor confers power to act, but only commands the exercise of powers already existing, when it is the duty of the person or body proceeded against to act without its agency. While it may require the performance of a purely ministerial duty in a particular manner, its command is never given to compel the discharge of a duty involving the exercise of judgment or discretion in any specified way; for that would substitute the judgment or discretion of the court issuing the writ for that of the person or persons against whom the writ was issued. * * * It is a universal rule that, in the discharge of all duties involving the exercise of official judgment or discretion, the officer or tribunal must be left free to act, and cannot be controlled in a particular direction." People v. Commissioners, 149 N. Y. 26, 43 N. E. 418. My attention has not been called to any decision upon this section of the statute; neither have I found any involving the question passed upon here. The application of the mayor was made in good faith, with a conscientious desire to assume the responsibilities and execute the duties of his office, and the resistance of the common council thereto was made in the same spirit. No costs are allowed to either party.

Application for writ denied.