(121 App. Div. 84)

PEOPLE ex rel. SECURITY TRUST CO. OF ROCHESTER v. TREASURER
OF MONROE COUNTY.

(Supreme Court, Appellate Division, Fourth Department. July 9, 1907.)

MANDAMUS—SUBJECTS OF RELIEF—MUNICIPAL IMPROVEMENT—PAYMENT OF IN-
DEBTEDNESS—COUNTY TREASURER.

Mandamus will not lie to establish rights or to determine legal con-
troversies, but solely to compel the doing of acts clearly the duty of one
to do without command; and hence, under Laws 1892, p. 1158, c. 603,
§§ 11, 13, authorizing commissioners to issue certificates of indebtedness
to pay the expense of constructing a sewer in a city, Laws 1904, p. 1467,
c. 620, § 2, providing the city treasurer should deliver to the county treas-
urer all the assessment rolls, etc., received from the commissioners and
all moneys arising from assessments, and section 4, providing such
moneys received by the county treasurer should be deemed, as to their
custody, county funds, and that the treasurer shall file semiannual state-
ments with the County Court, and that the court shall give notice of the
time and place of auditing the accounts, and any person interested in
the fund may be heard as to such audit, and that the court may allow the
accounts after such hearing, there being no statutory provision for the
payment by him of the indebtedness certificates, he may not be required
by mandamus to pay out any of the fund in liquidation of the indebted-
ness, except upon application to the County Court and an order by such
court that such payment be made.

Appeal from Special Term, Monroe County.

Application for mandamus by the people, on the relation of the Se-
curity Trust Company, against the treasurer of the county of Monroe.
From an order directing peremptory mandamus to issue, defendant
appeals. Reversed, and application denied.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS,
KRUSE, and ROBSON, JJ.

John A. Barhite, for appellant.
Harris, Havens, Beach & Harris and Edwin A. Nash, for respondent.

WILLIAMS, J. The order should be reversed, with costs, and the
application denied, with $50 costs.

The serious question involved in this appeal is whether peremptory
mandamus is the appropriate or a proper remedy. The question does
not involve the claims of respondent alone. There are many others
of a like nature, and the precedent here established is likely to be fol-
lowed in all other cases of a like nature. The rule of law is that man-
damus may not be used to establish rights or to determine legal con-
troversies, but solely to compel the doing of acts which it was the
clear duty of a party to do without any commands whatever. People
ex rel. Harris v. Com'rs, 149 N. Y. 26, 30, 46 N. E. 418; Brownsville
v. Loague, 129 U. S. 493, 9 Sup. Ct. 327, 32 L. Ed. 780. So that the
question is whether it was the legal duty of the county treasurer, when
the trust company demanded partial payment of its claim, to make
such payment.

We need to understand the facts and to consider some acts of the
Legislature in order to determine this question. Chapter 603, p. 1152,
of the Laws of 1892, authorized the construction of a sewer in the
Tenth, Fifteenth, and Twentieth Wards of the city of Rochester and

in the town of Gates, Monroe county. Section 4 of this act (amended by chapter 438, p. 781, Laws of 1895) provided for the appointment of three commissioners to construct the sewer. They were authorized to appoint one of their number a treasurer. And it was provided:

"The treasurer shall, during the continuance of the commission, collect and be the custodian of all moneys to be collected or received by the commissioners under the provisions of this act, and he shall pay out the moneys so received only upon the orders of the commissioners, signed by at least two of their number."

Sections 7 and 12 of the act (section 7 amended by chapter 438, p. 781, Laws of 1895) provided for the apportionment of the expense of constructing the sewer among property owners in the form of assessments, and for the collection of the same. Sections 11 and 13 of the act authorized the issue by the commissioners of 6 per cent. certificates of indebtedness, in such form as they deemed proper, in payment of expenses in the construction of the sewer. Section 20 of the act, amended by chapter 438 of the Laws of 1895, provided that, upon the completion of the sewer, the commissioners should file with the treasurer of the city of Rochester their records, books of account, and all papers relating thereto, and all moneys on hand, assessment roll, uncollected assessments, and papers connected therewith, and the city treasurer should from that time—

"discharge all the duties and possess all the powers imposed upon or vested in the treasurer of said commission by virtue of the provisions of this act [chapter 438, Laws of 1895] and of chapter 603 of the Laws of 1892."

By section 1, c. 315, p. 935, Laws of 1898, it was provided that the commissioners, having completed the sewer, should within 20 days transmit to the city treasurer all their records and proceedings, with the assessment roll made by them, and all moneys collected thereon, and all other funds in their hands, and thereupon the powers and duties of the commissioners should cease, except as thereinafter provided (for the making of new assessments under some circumstances). Section 2 of that act provided that the city treasurer was empowered to issue and sell 4½ per cent. assessment bonds, to the amount of $400,-000, and with the proceeds thereof and any available moneys in his hands as successor in office to the commissioners he was directed to redeem and cancel the certificates of indebtedness or assessment bonds theretofore issued by the commissioners; the new bonds to have the same force and effect as the old ones issued by the commissioners. Section 2, c. 620, p. 1467, Laws of 1904, provided that in June of that year the city treasurer should deliver to the county treasurer of Monroe county all assessment rolls and other property received by him from said commissioners, and that he should pay to such county treasurer all moneys remaining in his hands arising from the collection of assessments for the sewer. That act provided for the collection of unpaid assessments, and the payment thereof to the county treasurer. Section 4 of that act provided that:

"The moneys received by the treasurer of the county of Monroe shall be deemed, as to the custody of the same, as funds of the county of Monroe, and shall be known as the 'West Side Sewer Fund.'"

It provides for the deposit of the same, and that the treasurer "shall at least once in six months file a statement of said fund with the Monroe County Court," that the court should give notice of the time and place when and where the said accounts would be audited, and any person interested in the fund should have the right to be heard as to such audit, and the County Court should have power to audit and allow said accounts after such hearing. So much for the acts of the Legislature relating to the matter here involved.

As to the facts, it appears that the commissioners proceeded to construct the sewer, and issued certificates of indebtedness or bonds, amounting to $453,500, upon 6 per cent. interest, of which there are now outstanding and unpaid $281,000. No 4½ per cent. bonds were issued by the city treasurer under the act of 1898. Only the 6 per cent. certificates of indebtedness or bonds are outstanding. Many of those issued have been received under the provisions of the acts for assessments upon property owners. The trust company holds $38,000 of these certificates or bonds. There is in the hands of the county treasurer $89,271.19 of moneys belonging to this fund, and the claim made is that the trust company is entitled to its proportionate share of this money and the treasurer was bound to pay it on demand, without the direction of any court or of the supervisors of the county. Very likely the supervisors would have no control over the fund, because, although it is made by statute a county fund, yet the treasurer is required to account for the same to the County Court, which has the power to audit and allow the account, after hearing all parties interested in the fund.

But it seems to us the treasurer, in view of the requirement of the statute that he submit to the audit of the County Court, and that there is no express statutory provision for the payment by him of these certificates or bonds, should not be held liable or required to pay out any of this fund in liquidation of this indebtedness, except upon application to the County Court and an order by such court that such payment be made. The court, which had the whole matter of auditing of the accounts of the treasurer relating to the disposition of the fund in its charge, would, before making such an order, require proofs insuring safety to be made as to the claim presented, and such notice to other parties interested in the fund as would be required upon the audit subsequently required to be made by it. We do not think it should be held that the treasurer must, on demand, determine whether the claimant is entitled to be paid a part of the fund and take his chances of the County Court subsequently agreeing that the payment was properly made and allowing the same in his audit. There might be no trouble as to the claim of the trust company; but there are many other claims, and the claimants are unknown and uncertain. Is it quite right that the treasurer should be required to determine at his peril the genuineness of all certificates or bonds presented, and the ownership thereof, and perhaps other facts involved, and, in the event of a mistake, be personally liable therefor?

It seems to us not, and that the peremptory mandamus in this case was improperly granted.

Order reversed, with costs, and motion denied, with $50 costs. All concur.