PEOPLE ex rel. DANZIGER v. METZ, Comptroller.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. MUNICIPAL CORPORATIONS—MARKET PERMIT—ASSIGNMENT—OPERATION AND EFFECT.

Market stalls are rented on permits issued by the city comptroller, and are not assignable without his written consent. The rentals are fixed by the commissioners of the sinking fund. Relators' assignor, under his permit, was allowed to sell all country produce, including live poultry. The assignment was duly approved by the comptroller and commissioners, and the sum to be paid therefor fixed. *Held*, that the comptroller cannot limit relators' privileges by excepting live poultry; they being entitled to a permit exactly like that which their assignor held.

2. MANDAMUS—SUBJECTS OF RELIEF—MINISTERIAL ACTS IN GENERAL.

Where the permit to a market stand is assigned with the approval of the proper authorities giving the assignee the same privileges as were pos-

sessed by the assignor, and the comptroller refuses to issue the assignee a permit without restricting the privileges, mandamus will lie to compel him so to do; the issuance of the new permit being purely a ministerial act.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Mandamus, §§ 189–194.]

Appeal from Special Term.

Mandamus by the people, on the relation of Adolph Danziger, against Herman A. Metz to compel respondent, as comptroller, to issue appellants a certain permit. Motion denied, and relator appeals. Reversed, and relief granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Edward W. S. Johnston, for appellants.

Theodore Connoly, for respondent.

McLAUGHLIN, J. The relators are the assignees of certain stalls or stands in West Washington Market in the city of New York. These stalls are rented on permits issued by the comptroller of the city, and are revocable for good cause—not assignable without the written consent of the comptroller. The rentals are fixed by the commissioners of the sinking fund, who, together with the bureau for the collection of city revenue and markets, have the general management and control of the market. Greater New York Charter, Laws 1901, p. 58, c. 466, § 163. The assignment to the relators was duly approved by the comptroller and the commissioners of the sinking fund. The permit under which the assignor of the relators occupied the stand allowed them to sell "country produce"; but the permit issued to the relators contained the provision:

"The above stand to be occupied only as a stand for the sale of country produce. Selling live poultry strictly prohibited."

They objected to the insertion in the permit of the words "selling live poultry strictly prohibited," and requested that the same be taken out. This was refused, and thereupon they moved for a peremptory writ of mandamus directing the respondent to issue to them a permit to use the stalls for the sale of country produce without the restriction, or to amend the permit which they had by striking the same therefrom. Their motion was denied, and they have appealed.

I am of the opinion that when the assignment to the relators was approved by the comptroller and the commissioners of the sinking fund, and the sum to be paid therefor fixed, the relators thereupon became entitled to exactly the same rights which their assignor had previously had under its permit. The assignment, with the consent of the necessary officers, might have been indorsed on the old permit. That being so, the issuance of the new permit was a purely ministerial act, and mandamus will lie to compel its performance (People ex rel. Harris v. Commissioners of the Land Office, 149 N. Y. 26, 43 N. E. 418; People ex rel. McCabe v. Matthies, 92 App. Div. 16, 87 N. Y. Supp. 196, affirmed 179 N. Y. 242, 72 N. E. 103); otherwise the assignment which they obtained for a valuable consideration, and for which they had obtained the requisite consent, might be partially or wholly de-

stroyed by ·the arbitrary act of the respondent. No affidavits were presented in behalf of the respondent, so that we must assume the material allegations in the petition to be true, and, if this be done, then the relators were clearly entitled to a permit in the form requested.

What the respondent claims is that the issuance of permits rests entirely in his discretion; and, inasmuch as it does not appear that the discretion was abused, the writ ought not to issue, in the absence of some statute commanding it. This may be true in the first instance; but, inasmuch as that is not the question now before us, we do not pass upon it. The question here is whether the respondent, after having approved of the assignment, can arbitrarily change the permit by issuing one containing greater restrictions than the one held by the assignor. After a permit has once been issued, it cannot be revoked without good and sufficient cause (Greater New York Charter, Laws 1901, p. 53, c. 466, § 151, subd. 1), and no such cause is here shown; on the contrary, the action of the comptroller would seem to be arbitrary and without justification. There are many stalls or stands immediately adjacent to those of the relators, where live poultry is being sold under permits to sell country produce. The relators' assignor sold live poultry at these stalls for a long time, and it is a little significant, in view of these facts, that the respondent should insist on issuing a permit restricting the relators in such sale. But, whether significant or not, what we hold is that the relators, upon obtaining the consent of the comptroller and the commissioners, without reservation, that the permits and stands should be transferred to them, thereupon became absolutely entitled to a permit exactly like that which their assignor held, and its issuance, as already said, was a ministerial act only, the performance of which may be compelled by peremptory writ of mandamus.

The order appealed from, therefore, must be reversed, with $10 costs and disbursements, the. motion granted, and a writ issue commanding the comptroller to strike from the permit issued to the relators the words "selling live poultry strictly prohibited," or to issue another permit with such words omitted, with $50 costs. All concur.